CC-96-12                                              1

En el Tribunal Supremo de Puerto Rico

| EL PUEBLO DE PUERTO RICO Recurrido V. Angel L. Santiago Agricourt Peticionario | Certiorari 98TSPR163 |
|---|---|

Número del Caso: CC-96-0012

Abogados de la Parte Peticionaria: Lic. Margarita Carrillo Iturrino

Abogados de la Parte Recurrida: Hon. Carlos Lugo Fiol, Procurador General

Lic. Mayra J. Serrano Borges
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Bárbara Sanfiorenzo Zaragoza

Tribunal de circuito de Apelaciones: Circuito Regional de San Juan Panel IV

Juez Ponente: Hon. Broco Oliveras

Fecha: 12/8/1998

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Recurrido

        v.                          CC-96-12      Certiorari

Angel L. Santiago Agricourt

    Peticionario

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 8 de diciembre de 1998

Revisamos, a través del mecanismo procesal de la orden para mostrar causa, una resolución emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, el 29 de diciembre de 1995, que <u>confirmó</u> una resolución dictada por el Tribunal de Primera Instancia, el 15 de diciembre de 1995, mediante la cual se <u>denegó</u> una solicitud del peticionario, Angel L. Santiago Agricourt, de <u>retirar</u> su alegación de culpabilidad producto de una alegación pre-acordada que, según éste alega, es contraria a derecho.

I

Contra el peticionario Santiago Agricourt el Ministerio Público presentó varios cargos por alegadamente haber cometido el delito grave de oferta de soborno[1], y, un segundo cargo por el delito grave de amenazas contra un funcionario del Sistema de Justicia.[2] Con respecto a los cargos de oferta de soborno, se alegó en la denuncia que los días 30 de septiembre y 14 de octubre de 1993 el peticionario dio dinero a dos alguaciles del Tribunal de Primera Instancia para diligenciar dos órdenes de arresto, acto regular del puesto de alguacil. Sobre el último cargo, se le imputó amenazar o alterar la paz de un alguacil del Tribunal de Primera Instancia, quien era el testigo principal de cargo en un caso en su contra.

El acto de lectura de las acusaciones se efectuó el 28 de marzo de 1994 y en éste el acusado hizo alegación de no culpable de todos y cada uno de los cargos imputados. Luego de varios incidentes procesales, inconsecuentes para la resolución del caso ante nos, la vista en su fondo fue señalada para el 9 de octubre de 1995. Llegado ese día, Santiago Agricourt informó al tribunal que interesaba renunciar a su derecho a un juicio por jurado. Además, su abogado indicó a dicho foro judicial que había llegado a una alegación pre-acordada con la fiscalía por medio de la cual se reducirían los dos cargos por infringir el delito

---

[1] Artículo 212 del Código Penal, 33 L.P.R.A. sec. 4363.

de oferta de soborno a dos cargos por omisión en el cumplimiento del deber[3], y, el cargo de amenazas se reduciría a un cargo por desacato[4], ambos delitos menos graves. Se expuso, además, que como parte del acuerdo, se solicitaba que el caso fuera referido a un oficial probatorio para que lo evaluara y que, de ser favorable la evaluación, el Ministerio Público estaba conforme con la imposición de una pena de multa, o, en la alternativa, que se impusiera al acusado una sentencia suspendida en la libre comunidad. La representación legal del peticionario manifestó para el récord, además, que el acuerdo llegado con el fiscal había quedado plasmado y sometido por escrito en un documento donde se hizo constar, entre otras cosas, los derechos renunciados por el acusado a consecuencia del mismo. El Ministerio Público solicitó la enmienda de los pliegos acusatorios para conformarlos a la alegación pre-acordada.

Luego de escuchar a ambas partes, el tribunal entrevistó a los testigos de cargo respecto a si tenían alguna objeción a la negociación, indicando éstos no tener ninguna. Procedió, entonces, a asegurarse de la voluntariedad de la renuncia al derecho a juicio por jurado y de la alegación de culpabilidad efectuada por el acusado. A esos efectos, le preguntó si aceptaba su culpabilidad por los hechos; si su abogado le había explicado los derechos a

---

[2] Artículo 239-B del Código Penal, 33 L.P.R.A. sec. 4435-B.
[3] Artículo 214 del Código Penal, 33 L.P.R.A. sec. 4365.
[4] Artículo 235 del Código Penal, 33 L.P.R.A. sec. 4431.

los cuales renunciaba mediante el acuerdo; y si estaba conforme con la representación legal obtenida hasta ese momento, a lo cual Santiago Agricourt contestó en la afirmativa. El tribunal también inquirió sobre su edad y preparación académica, a lo cual el acusado contestó que tenía sesenta y dos años y que era fiador de profesión.

El tribunal pasó a enumerarle y a explicarle los derechos que le asisten a los acusados durante un proceso criminal y a señalarle que, al declararse culpable, estaba renunciando a éstos. Luego confrontó al acusado con el documento constitutivo de la alegación pre-acordada y éste reconoció su firma, la de su abogado y la del Ministerio Público. El tribunal le preguntó si había sido de alguna forma amenazado, a lo cual contestó en la negativa. En consecuencia, el tribunal aceptó la alegación de culpabilidad y refirió el caso a un oficial socio-penal para que entrevistara al acusado. Por último, señaló la vista para dictar sentencia para el 15 de diciembre de 1995.

Así las cosas, el 14 de diciembre de 1995 Santiago Agricourt radicó, por derecho propio, ante el Tribunal de Primera Instancia, una moción en la que solicitaba retirar su alegación de culpabilidad. Expuso que desde el comienzo del caso había informado a su abogado que no renunciaría a su derecho a un juicio por jurado y que no haría alegación de culpabilidad debido a que él era inocente de los delitos por los cuales se le acusó. Además, Santiago Agricourt

señaló que su abogado fue persistente al aconsejarle que, conforme a su mejor criterio profesional, debía aceptar la negociación pre-acordada con miras a acogerse a una sentencia suspendida. El peticionario explicó que las únicas dos razones por las cuales efectuó la alegación de culpabilidad fueron, primero, porque su abogado insistió en que ésa era la alternativa procesal que más le convenía; y, segundo, debido a que sufre de una enfermedad que le requiere someterse semanalmente a tratamientos de diálisis. Afirmó que no se siente culpable de delito alguno y que interesa que se vea el caso en su fondo. Por último, solicitó que, de permitirse la renuncia del abogado que lo representaba hasta ese momento, quien había pedido permiso al tribunal para renunciar el 14 de diciembre de 1995[5], le concediera un término para conseguir una nueva representación legal.

En la vista para el pronunciamiento de la sentencia, celebrada el 15 de diciembre de 1995, el Tribunal de Primera Instancia aceptó la renuncia del abogado de Santiago Agricourt y denegó la moción para retirar la alegación de culpabilidad que éste radicara. El tribunal fundamentó su determinación en que había sido minucioso al analizar la voluntariedad del acusado al efectuar su alegación. De otra parte, increpó al acusado por no haberse

---

[5] Conforme a la moción sobre renuncia de representación legal, Santiago Agricourt había manifestado a su abogado que se proponía solicitar al tribunal retirar su alegación de culpabilidad y que, para tal gestión, el acusado

entrevistado con el oficial probatorio, advirtiéndole que de no hacerlo ordenaría su ingreso en una institución penal. Debido a que no contaba con el informe presentencia, el tribunal difirió la lectura de la sentencia para el 10 de enero de 1996.

En igual fecha, 15 de diciembre de 1995, Santiago Agricourt presentó, por derecho propio, ante el Tribunal de Circuito de Apelaciones, una moción en auxilio de su jurisdicción, solicitando la paralización de los procedimientos ante el foro de instancia, unida a un recurso de certiorari, en el cual alegó que había errado el tribunal recurrido al negarse a aceptar el retiro de la alegación de culpabilidad que éste hiciera a insistencias de su abogado y debido a su delicada condición de salud. Argumentó, además, que la alegación de culpabilidad por el delito de omisión en el cumplimiento del deber era contraria a derecho, dado que el acusado no es funcionario público y que no se trataba de un delito menor incluido en el de oferta de soborno. Asimismo, alegó que el delito de desacato tampoco está comprendido dentro del delito de amenaza tipificado en el Artículo 239-B del Código Penal.[6]

El 15 de diciembre de 1995, el Tribunal de Circuito de Apelaciones declaró no ha lugar la moción en auxilio de jurisdicción y desestimó la petición de certiorari, principalmente, por incumplimiento craso de su Reglamento.

---

interesaba contratar los servicios de otro abogado; razón por la cual, le pidió la renuncia.

El foro apelativo explicó que en el recurso no se especificó la resolución o sentencia de la cual se recurría. Además, habiendo el foro de instancia pospuesto la vista de pronunciamiento de sentencia para el 10 de enero de 1996, razonó que no existía justificación alguna para paralizar la referida vista de inmediato.

El 19 de diciembre de 1995, Santiago Agricourt radicó, por derecho propio, ante el Tribunal de Primera Instancia, una moción donde argumentó que su moción solicitando permiso para retirar la alegación de culpabilidad había sido denegada erróneamente de plano y sin que se le permitiera expresarse sobre la misma. Acompañó con esta nueva moción una declaración jurada sobre lo que él hubiese declarado al tribunal el 15 de diciembre de habérsele permitido. En síntesis, el acusado alegó en la declaración jurada que el día que fue llamado el caso para juicio su abogado le manifestó que no estaba listo para ver el caso y que él no veía casos sino estaba preparado. Por esta razón, sostiene el acusado, fue que dicho letrado decidió negociar con el fiscal una alegación pre-acordada, ignorando los deseos y mejores intereses de su representado. Alegadamente, su abogado también le expresó que la juez le había apercibido que, de no verse el caso, ordenaría el arresto del abogado. Según Santiago Agricourt, su alegación de culpabilidad no fue hecha libremente, más bien fue el producto de la insistencia de su abogado, la amenaza de que

---

[6] 33 L.P.R.A. sec. 4435-B.

lo arrestaran y su estado crítico de salud. Añadió que desde el inicio del caso había manifestado su inocencia, haciendo alegación de no culpable en el acto de lectura de la acusación. El acusado también informó al tribunal que su alegación de culpabilidad era contraria a derecho, puesto que los hechos que le fueron imputados no configuraban los delitos por los cuales hizo alegación de culpabilidad.[7]

Por otro lado, en horas de la tarde del 19 de diciembre, Santiago Agricourt, por medio de una nueva representación legal, radicó otra petición de certiorari interlocutorio ante el Tribunal de Circuito de Apelaciones, recurriendo de la decisión del Tribunal de Primera Instancia mediante la cual se denegó su solicitud para retirar la alegación de culpabilidad. Alego dos errores, a saber: que hizo alegación de culpabilidad a insistencias de su abogado y debido a su delicada condición de salud, por lo que su alegación no fue voluntaria; y que su alegación de culpabilidad es improcedente en derecho porque los delitos objeto de la alegación pre-acordada no eran delitos menores incluidos en los imputados originalmente y porque, dado los hechos del caso, tales delitos no se configuraron. El Tribunal de Circuito de Apelaciones, el 29 de diciembre de 1995, denegó el auto de certiorari por entender que el

---

[7] Con respecto a esta moción, el Tribunal de Primera Instancia emitió una orden el 8 de febrero de 1996 donde ordenó al acusado referirse a su minuta del 31 de enero de 1996 por medio de la cual se paralizaron los procedimientos a nivel de instancia en respuesta de una orden que a esos efectos emitiera este Tribunal; por tal razón, resolvió no entrar a considerarla.

Tribunal de Primera Instancia no abusó de su discreción al denegar la solicitud del acusado para retirar su alegación de culpabilidad.

El 10 de enero de 1996 se celebró la vista para el pronunciamiento de la sentencia ante el Tribunal de Primera Instancia. En tal vista, el Ministerio Público informó al tribunal que Santiago Agricourt no había comparecido ante un oficial probatorio para entrevista, incumpliendo la orden que a esos efectos emitiera el tribunal el 15 de diciembre de 1995. Por su parte, el acusado, asistido por su abogada, informó haber incumplido con la orden del foro de instancia porque entendía que, estando el caso ante la consideración del tribunal apelativo, los procedimientos a nivel de instancia estaban paralizados.[8] Debido a que el acusado hizo caso omiso a las órdenes del Tribunal de Primera Instancia para que se entrevistara con un oficial probatorio, dicho foro ordenó su ingreso en una institución penal por el término de tres semanas, a los fines de que el oficial probatorio pudiera completar su informe.

Ese mismo día, o sea el 10 de enero de 1996, Santiago Agricourt radicó ante este Foro una petición de certiorari y una moción en auxilio de jurisdicción. Mediante resolución de igual fecha ordenamos la paralización de los procedimientos a nivel de instancia. Así también, concedimos un término al Procurador General para que mostrara causa por la cual este Tribunal no debía expedir

el auto solicitado y dictar Sentencia revocatoria de las resoluciones recurridas.[9]

En el recurso que radicara, el acusado peticionario señala que erró el Tribunal de Circuito de Apelaciones al:

> "[1.]...resolver que el Tribunal de Primera Instancia no abusó de su discreción al denegar de plano su solicitud para retirar la alegación de culpabilidad, a pesar de que la determinación de dicho foro se hizo sin permitirle al peticionario presentar prueba en apoyo de su pedido y, por ende, el Tribunal de Primera Instancia no tenía elementos de juicio para llegar a una determinación.";

> "[2.]...resolver que era válida la alegación de culpabilidad del peticionario por el delito de omisión en el cumplimiento del deber a pesar de que él no es un funcionario público.";

> "[3.]...resolver que el peticionario no aportó elementos de juicio que permitieran concluir que los actos enmarcados en el artículo 235 del Código Penal (por el que el peticionario formuló alegación de culpabilidad) pudieran o no estar incluidos en el artículo 239B."; y

> "[4.]...concluir que al haber el peticionario consentido o solicitado que se redujeran los delitos graves de las acusaciones originales a delitos menos graves, renunció a su derecho de plantear como error que los delitos menores o estaban incluidos o relacionados con los delitos originales."

En cumplimiento de nuestra orden para mostrar causa, el Procurador General radicó su escrito el 8 de febrero de 1996, al cual el acusado respondió radicando un escrito de réplica el 4 de abril siguiente. Contando con la

---

[8] No obstante, el Tribunal de Circuito de Apelaciones nunca emitió una orden para paralizar los procedimientos.

[9] En vista de lo anterior, el Tribunal de Primera Instancia dejó sin efecto la orden de ingreso del acusado y ordenó su excarcelación, luego de haber confirmado con este Foro que la orden de paralización que emitiéramos incluía la orden de ingreso dictada por el foro de instancia.

comparecencia de ambas partes y estando en posición de resolver, procedemos a así hacerlo.

                                    II

        Bajo nuestro ordenamiento procesal criminal una persona acusada de cometer un delito sólo puede hacer una de dos alegaciones: culpable o no culpable.[10] Cuando un acusado formula una alegación de culpabilidad abdica totalmente los derechos constitucionales o estatutarios que protegen a los acusados, entre los cuales se encuentran: el derecho a que se establezca su culpabilidad más allá de duda razonable; el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado ante un juez o jurado; y el derecho a presentar evidencia a su favor y a rebatir la prueba presentada en su contra. Díaz Díaz v. Alcaide, 101 D.P.R. 846, 854 (1973); Pueblo v. Torres Nieves, 105 D.P.R. 340, 350 (1976); Pueblo v. Figueroa García, Opinión y Sentencia de 30 de enero de 1992. Por otra parte, mediante una alegación de no culpable, el acusado niega completamente las alegaciones principales de la denuncia o acusación presentada en su contra[11], y el ministerio fiscal viene en la obligación de probar, más allá de duda razonable, su culpabilidad.

---

[10] Regla 68 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 68. Sin embargo, la legislación especial sobre monopolios permite a las personas que violen sus disposiciones realizar alegación de "nolo contendere". Véase, 10 L.P.R.A. sec. 276.

[11] Regla 73 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 73.

La Regla 68 de las Reglas de Procedimiento Criminal[12] prescribe que el acusado o su abogado debe formular su alegación, verbalmente, en sesión pública; mientras que la Regla 69[13] aclara que si se trata de un delito grave, no se admitirá una alegación de culpabilidad a menos que el acusado esté presente y formule la alegación personalmente.[14]

Cuando un acusado se declara culpable el procedimiento debe ser bien riguroso y debe estar rodeado de todas las garantías posibles, teniéndose en cuenta que el acusado ha renunciado a una serie de derechos fundamentales que le garantizan la Constitución y las leyes. Por tal razón, para poder aceptar una alegación de culpabilidad, las Reglas de Procedimiento Criminal imponen sobre el tribunal la obligación de determinar, prioritariamente, si la misma se efectúa "...voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación".[15] En ese sentido, este Tribunal ha señalado que para poder aceptar una alegación de culpabilidad, el magistrado debe cerciorarse de que la renuncia de garantías procesales que conlleva tal alegación sea "...expresa, personal, voluntaria e inteligente...", Pueblo v. Torres Nieves, ante, a la pág. 350, y con

---

[12] 34 L.P.R.A. Ap. II, R. 68.

[13] 34 L.P.R.A. Ap. II, R. 69.

[14] Sin embargo, la aludida Regla excluye de este requisito a las corporaciones, aun tratándose de la imputación de un delito grave,; éstas podrán comparecer a alegar por medio de su abogado.

conocimiento de "...los derechos [a los] que renuncia y [de] las consecuencias que la alegación conlleva". Díaz Díaz v. Alcaide, ante, a la pág. 854.

De conformidad con lo anterior, hemos expresado que es conveniente para una mejor administración de la justicia que el récord revele este estado de consciencia y voluntariedad del acusado al momento de declararse culpable. De esta manera, se podrá disponer, con mayor prontitud, de cualquier reclamo que se formule en contra de la sentencia. Díaz Díaz v. Alcaide, ante, a la pág. 854.

Por otra parte, las Reglas de Procedimiento Criminal disponen que el tribunal tiene potestad para decidir si admite o si rechaza una alegación de culpabilidad, ordenando que en su lugar se anote una alegación de no culpable.[16] Pueblo v. Dávila Delgado, Opinión y Sentencia de 20 de mayo de 1997. De igual forma, el tribunal tiene discreción para "...permitir que la alegación de culpable se retire y que se sustituya por una alegación de no culpable o, previo el consentimiento del fiscal, por la de culpable de un delito inferior al imputado pero incluido en éste, o de un grado inferior del delito imputado", siempre y cuando sea antes de que se dicte la sentencia.[17]

Una alegación de culpabilidad puede ser el producto de una negociación entre el Ministerio Público y el abogado

---

[15] Regla 70 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 70.

[16] Regla 71 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 71.

del imputado por medio de la cual el acusado se declara culpable a cambio de ciertos beneficios que el Estado le concede. Desde ya hace algún tiempo, este Tribunal ha enfatizado los beneficios para el Sistema de Justicia Criminal de las alegaciones de culpabilidad obtenidas mediante este tipo de acuerdo, comúnmente denominadas como alegaciones pre-acordadas. Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984). Cuando un acusado se declara culpable, el Estado queda relevado de celebrar un procedimiento criminal que puede ser extenso y costoso. Además, el sistema de alegaciones pre-acordadas descongestiona los cargados calendarios de nuestros tribunales y permite que los acusados sean enjuiciados dentro de los términos requeridos por el ordenamiento procesal. Como hemos explicado anteriormente, "[s]in las alegaciones preacordadas sería muy difícil, si no imposible, enjuiciar a todas las personas acusadas de cometer delitos dentro de los términos mandados por el ordenamiento procesal y por la Constitución". Pueblo v. Mójica Cruz, ante, a la pág. 577; Pueblo v. Figueroa García, ante.[18] Como contrapartida, las personas que aceptan su culpabilidad quedan liberadas "...de la angustia martirizante que provoca la natural reacción de saberse sometido a un enjuiciamiento criminal".[19]

---

[17] Ibid.
[18] Véase, además, Exposición de Motivos de la Ley Núm. 37, Leyes de Puerto Rico, 1985, pág. 145.
[19] Ibid.

Tanto en la jurisdicción federal como en la puertorriqueña se ha sostenido la validez constitucional del mecanismo procesal de la alegación pre-acordada y se ha reconocido que es una práctica de gran utilidad que debe ser fomentada. Brady v. United States, 395 U.S. 238, 242-244 (1969); Pueblo v. Mojica Cruz, ante, a la pág. 577; Pueblo v. Marrero Ramos, Rivera López, 125 D.P.R. 90, 96 (1990); Pueblo v. Figueroa García, ante.

Ahora bien, debe quedar claro que la conveniencia, desde el punto de vista administrativo, de las alegaciones pre-acordadas no constituye obligación alguna para las partes. Ni el Estado ni el acusado vienen obligados a iniciar conversaciones a tales efectos. Como apuntáramos previamente, "[e]llo es un área que responde propiamente a la coincidencia de criterios por cualesquiera razones o motivos" particulares que tengan cada una de las partes. Pueblo v. Ayala Rodríguez, 116 D.P.R. 382, 386 (1985); Pueblo v. Figueroa García, ante; Pueblo v. Quiñones Román, Opinión y Sentencia de 17 de mayo de 1993; Pueblo v. Dávila Delgado, ante. Además, para que el Ministerio Público pueda entrar en una alegación pre-acordada debe tomar en consideración "...la evidencia que obra en manos del Estado para probar el delito, la naturaleza del delito imputado; las circunstancias en las que el mismo se llevó a cabo; la posición asumida por las víctimas y testigos del delito; el historial delictivo del imputado; la deseabilidad de

aligerar los procedimientos judiciales, y las probabilidades de éxito o fracaso del caso...".[20]

El Ministerio Público debe obrar con mucha cautela al momento de efectuar un acuerdo de esta naturaleza y cerciorarse de que la misma procede en derecho; esto por la sencilla razón de que "...la responsabilidad inicial de una alegación pre-acordada es del Fiscal que negocia el acuerdo y la responsabilidad final es del tribunal sentenciador".[21] De igual manera, el abogado de la defensa, teniendo presentes similares criterios de evaluación, debe velar por los mejores intereses de su cliente, escogiendo el acuerdo más idóneo, dentro de todas las posibilidades legales a su alcance.

Con respecto a la naturaleza jurídica de las alegaciones pre-acordadas, este Tribunal ha resuelto que no son ni un contrato tradicional entre el acusado y el Estado, como tampoco un precontrato de oferta u opción de alegación entre las partes donde alguna de ellas pueda exigir el cumplimiento específico en caso de incumplimiento. Pueblo v. Figueroa García, ante. Más bien, se trata de un acuerdo de voluntades "sui generis" que depende para su consumación de la aprobación final del tribunal. Con antelación a ese momento, no podemos hablar de bilateralidad entre las obligaciones de las partes, pues ambas están en libertad de retirar su consentimiento antes

---

[20] Orden Administrativa Núm. 93-90 emitida por el Secretario de Justicia el 23 de noviembre de 1993.

de que el tribunal apruebe la alegación. Dicho de otro modo, ninguna de las partes queda vinculada por la negociación hasta tanto el tribunal la acepte. <u>Pueblo</u> v. <u>Figueroa García</u>, <u>ante</u>.

En Puerto Rico, el procedimiento para reglamentar el sistema de alegaciones pre-acordadas fue originalmente adoptado por este Tribunal en <u>Pueblo</u> v. <u>Mojica Cruz</u>, <u>ante</u>. En ese caso, conscientes de que nuestra jurisdicción se había mantenido rezagada en este importante aspecto de la justicia criminal, decidimos pautar la norma procesal al respecto. Posteriormente, la Legislatura aprobó una nueva Regla, la Regla 72 de las Reglas de Procedimiento Criminal[22], en la cual incorporó a nuestro cuerpo de reglas procesales penales el sistema de alegaciones pre-acordadas que este Tribunal adoptó en <u>Mojica Cruz</u>, <u>ante</u>.[23]

De acuerdo con la actual Regla 72 de las de Procedimiento Criminal[24], un acusado puede declararse culpable bien del delito por el cual se le acusa, bien por uno de grado inferior o relacionado, a cambio de que el fiscal se comprometa a realizar uno o más de los siguientes actos: (a) pedir que se archiven otros cargos presentados en contra del acusado que se estén tramitando; (b) suprimir cualquier alegación de reincidencia del acusado; (c) proponer una sentencia en específico o no oponerse a la

---

[21] **Ibid.**

[22] **34 L.P.R.A. Ap. II, R. 72.**
[23] **Ley Núm. 37 de 28 de junio de 1985.**
[24] **34 L.P.R.A. Ap. II, R. 72.**

solicitud que realice el acusado con relación a determinada sentencia, aclarando al imputado que ninguno de estos dos cursos de acción serán obligatorios para el tribunal[25]; o (d) convenir que cierta sentencia en especial dispone adecuadamente del asunto.[26]

Las Reglas de Procedimiento Criminal proscriben toda intervención del tribunal durante el desarrollo de este tipo de negociación entre el Estado y el acusado.[27] Pueblo v. Mojica Cruz, ante, a la pág. 580; Pueblo v. Ayala Rodríguez, ante, a la pág. 386; Pueblo v. Figueroa García, ante.[28] Las partes darán conocimiento al tribunal de la alegación pre-acordada en sesión pública o, de mediar causa justificada para ello, en cámara. Por lo general, la

_____

[25] Sobre este particular, resulta pertinente mencionar que, al adoptar el sistema de alegaciones pre-acordadas para nuestra jurisdicción, este Tribunal dejó establecido lo siguiente:

> "...la sentencia a imponerse puede ser objeto de recomendación [por el Ministerio Público], pero sin que venga obligado el tribunal a aceptarla. La sentencia no puede ser comprometida por acuerdo de las partes. La discreción del juez a este respecto está arraigada en el propio texto de las Reglas 70, 71 y 72 de Procedimiento Criminal, .... Esa discreción continuará siendo función exclusiva del juez bajo el sistema de alegaciones pre-acordadas". Pueblo v. Mojica Cruz, ante, a la pág. 581.

[26] Regla 72 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 72.

[27] Ibid.

[28] Sin embargo, considerando la facultad constitucional e inherente de los tribunales de instancia para tomar medidas conducentes a la más pronta adjudicación de las causas criminales y civiles, hemos resuelto que los jueces de instancia pueden exigir a los abogados de la defensa que, en la etapa del acto de la lectura de la acusación, manifiesten su deseo de entrar en conversaciones de alegaciones pre-acordadas con la fiscalía. Pueblo v. Ayala Rodríguez, ante, a la pág. 386.

notificación se efectuará antes del juicio, preferiblemente en el acto de la lectura de la acusación; sin embargo, el foro de instancia podrá, en el ejercicio de su discreción y si las circunstancias lo hacen meritorio, permitir que se realice en cualquier otro momento.[29]

Si el acusado y el fiscal convienen por uno de los cursos de acción en los incisos (a), (b) y (d) precedentes, el tribunal tiene la opción de aceptar o rechazar el acuerdo, o posponer su determinación hasta recibir y examinar el informe pre-sentencia. Si el acuerdo al cual se llegó fuere del tipo especificado en el inciso (c) anterior, el foro de instancia advertirá al acusado que, de no aceptar el tribunal la recomendación del fiscal o la solicitud de la defensa, éste no tendrá derecho a retirar su alegación.[30]

Al ponderar si acepta una negociación pre-acordada, el tribunal debe asegurarse, como cuando lo hace al dirimir si admite cualquier otra alegación de culpabilidad, que ésta fue efectuada con la voluntariedad y conformidad del acusado; que el imputado está consciente de todos los efectos y repercusiones de la alegación; que la misma es conveniente a una sana administración de la justicia; que

---

[29] Regla 72 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 72.

[30] Ibid. Ahora bien, con relación a esto último es menester aclarar que esta disposición no impide que, de aceptar el tribunal una alegación pre-acordada que sea contraria a derecho y la cual contenga este tipo de acuerdo, el acusado solicite al tribunal retirar su alegación de culpabilidad. Nótese que la Regla se refiere a cuando un tribunal rechace

se han observado y cumplido los requisitos exigidos en la Ley de Protección a las Víctimas y Testigos[31]; y, en términos generales, que "...las motivaciones, tras la alegación pre-acordada propuesta por las partes, son legítimas y procedentes en derecho". Pueblo v. Dávila Delgado, ante.[32] Para cerciorarse de la existencia de estas condiciones, el tribunal podrá solicitar del Ministerio Público y del abogado de la defensa todo dato e información necesaria, inclusive puede examinar al acusado y a cualquier otro testigo que a su juicio sea provechoso.[33]

Si el tribunal acepta la alegación pre-acordada, éste notificará al acusado que la misma ha sido incorporada y que constituirá parte de la sentencia.[34] Por otro lado, el foro de instancia, aun cuando acepte, en principio, la alegación pre-acordada, "...no está obligado a seguir las recomendaciones que le hagan las partes sobre una sentencia específica a imponerse al imputado de delito. Esto es, el tribunal tiene discreción para imponer la sentencia que entienda procede en derecho". (Enfasis en el original). Pueblo v. Dávila Delgado, ante; Pueblo v. Mojica Cruz, ante, a la pág. 581.

De otra parte, el tribunal tiene facultad discrecional para rechazar la negociación entre las partes y ordenar la

---

el acuerdo, no cuando acepte erróneamente una alegación de culpabilidad negociada entre las partes.

[31] Ley Núm. 22 de 22 de abril de 1988, 25 L.P.R.A. sec. 973.
[32] Regla 72 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 72.
[33] Ibid.

celebración de un juicio. <u>Betancourt Rojas</u> v. <u>Tribunal Superior</u>, 90 D.P.R. 747, 753 (1964). Si opta por este curso de acción, el tribunal así se lo informará a las partes y apercibirá al acusado, personalmente, en sesión pública o en cámara, de existir justificación para ello, que el tribunal no está obligado por la negociación. Además, brindará al acusado la oportunidad de retirar su alegación, advirtiéndole que, si persiste en su alegación de culpabilidad, la decisión del caso podría serle menos beneficiosa que la acordada previamente con el Ministerio Público.[35]

De todo lo anterior, y muy en particular del acuerdo entre las partes y del proceso decisorio del tribunal, debe tomarse constancia para el récord.[36] <u>Boykin</u> v. <u>Alabama</u>, 395 U.S. 238, 243-244 (1969); <u>Pueblo</u> v. <u>Mójica Cruz</u>, <u>ante</u>, a la pág. 578.

III

Discutidos los postulados básicos de nuestro Derecho Procesal Penal referentes a las alegaciones de culpabilidad que surgen como resultado de alegaciones pre-acordadas entre el Ministerio Público y la defensa, pasamos a analizar propiamente los señalamientos de error aducidos por el peticionario.

Arguye el acusado que la alegación pre-acordada hecha en el caso de autos es contraria a derecho y, por

---

[34] Ibid.
[35] Ibid.

consiguiente nula, por cuanto el delito de omisión en el cumplimiento del deber, comprendido en la misma, no se configuró toda vez que él no es un funcionario público, elemento esencial de ese delito. Asimismo, el peticionario alega que era improcedente la acusación por el delito de desacato ya que la alegada conducta delictiva que se le imputó no enmarca dentro de los elementos de ese delito. Además, aduce que estos delitos no son delitos menores incluidos dentro de los delitos por los cuales originalmente se le acusó ni grados menores de éstos.

Por su parte, el Procurador General argumenta que la alegación pre-acordada es válida porque tanto el delito de omisión en el cumplimiento del deber como el de desacato son delitos relacionados con los delitos objeto del primer pliego acusatorio. Además, considera que para aceptar una alegación pre-acordada no es necesario que exista una base en los hechos que sostenga los delitos comprendidos en ésta y que, de todos modos, el acusado aceptó los hechos imputados en su contra, acción que le impide impugnar la alegación. El Tribunal de Circuito de Apelaciones decidió acoger la posición del Procurador General y, en consecuencia, concluyó que la alegación pre-acordada era válida. Resolvemos.

IV

---

[36] Ibid.

La Regla 70 de las Reglas de Procedimiento Criminal[37] dispone que "[e]l tribunal no aceptará la alegación de culpabilidad sin determinar primeramente que la misma se hace voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación". Esta disposición reglamentaria proviene sustancialmente de la Regla 11 de las Reglas de Procedimiento Criminal federal[38]. Díaz Díaz v. Alcaide, ante, a la pág. 855. En ocasión de aclarar el procedimiento para determinar si una alegación de culpabilidad fue hecha voluntaria e inteligentemente, este Tribunal explicó que en la jurisdicción federal, para que la alegación de culpabilidad sea realmente voluntaria, el acusado debe poseer ciertos conocimientos respecto a la relación entre la ley y los hechos. Véase: Díaz Díaz v. Alcaide, ante, a la pág. 856; citando afirmativamente a McCarthy v. Unites States, 394 U.S. 459, (1969).

De igual manera, la regla federal requiere que el tribunal, además de examinar la comprensión del acusado respecto a la naturaleza de la acusación y las consecuencias de su alegación, se cerciore de que la alegación encuentra base en los hechos del caso. Ibid. A esos efectos, el inciso (f) de la Regla 11[39] preceptúa que: "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without

---

[37] 34 L.P.R.A. Ap. II, R. 70.
[38] Fed. R. Crim. P., R. 11.

making such inquiry as shall satisfy it that there is a factual basis for the plea". (Énfasis suplido.)

Abundando aún más sobre este aspecto, este Tribunal aseveró en Díaz Díaz v. Alcaide, ante, a la pág. 856, que:

> "El juez debe determinar 'que la conducta en que el acusado admite haber incurrido es constitutiva del delito imputado al cual se ha declarado culpable o de uno en él incluido.' El requerir este examen de la relación entre la ley y los actos que el acusado admite haber cometido persigue el propósito de 'proteger a un acusado que se encuentre en la posición de alegar voluntariamente con conocimiento de la naturaleza del cargo, pero sin darse cuenta que su conducta en realidad no cae dentro de la acusación."

Realizar esta determinación evita que un individuo se declare culpable por error o desconocimiento y, lo que es peor, sin que realmente sea culpable. Detenerse por un momento a efectuar esta investigación, no sólo evita que una persona inocente resulte convicta, sino que aumenta el conocimiento del tribunal con relación a la capacidad del acusado, su conformidad al hacer la alegación y su entendimiento de los cargos en su contra. Así también, ayuda a mantener un récord completo de los procedimientos, el cual sirve para demostrar que la aceptación de la alegación de culpabilidad fue válida, lo cual a su vez minimiza cualquier posibilidad de éxito que tenga el acusado si luego decide impugnar su alegación.[40]

Debe dejarse a la sana discreción del tribunal el grado de intensidad con que debe realizarse esta

---

[39] Ibid.

investigación. Una vez el juez quede satisfecho de que existe base en los hechos para sostener la alegación de culpabilidad se cumplen los requisitos del debido proceso de ley. Así también es función discrecional del foro sentenciador determinar la forma en que debe asegurarse de que existe relación causal entre los hechos cometidos por el acusado y el delito imputado en su contra. En la consecución de este fin, puede requerir del Ministerio Público y del representante legal del acusado aquella información, datos y documentos que tengan en su poder y que estime necesarios, o podrá examinar al acusado y a cualquier otra persona que a su juicio sea conveniente.[41]

Es menester destacar que el análisis que ahora adoptamos, sobre si hay base en los hechos para apoyar la alegación, es uno adicional al análisis de voluntariedad, consciencia e inteligencia. Nótese además, que el primero es un análisis de derecho en virtud del cual se determina si de los hechos surge que se configuran los elementos del delito. El segundo, es un análisis subjetivo mediante el cual el tribunal determina si el estado mental del acusado es uno de pleno conocimiento, voluntariedad, consciencia e inteligencia al formular su alegación.

Por otra parte, la Regla 72 de las de Procedimiento Criminal[42] prescribe que, como parte de una alegación pre-acordada, el acusado puede hacer alegación de culpabilidad

---

[40] American Bar Association, Standards relating to pleas of guilty, Approved Draft, 1968, Standard 1.6., p. 32-33.
[41] American Bar Association, Op. cit., p. 33-34.

por "...el delito alegado en la acusación o denuncia, o por uno de grado inferior o relacionado...". Como adelantáramos, esta disposición fue promulgada por la Asamblea Legislativa en 1985, a raíz de nuestra decisión en Pueblo v. Mojica Cruz, ante. En ese caso, adoptamos la práctica de las alegaciones de culpabilidad negociadas entre las partes utilizando como modelo la Regla 81 del Proyecto de Reglas de Procedimiento Criminal, sometido por el Comité de Procedimiento Criminal de la Conferencia Judicial de 1978[43], la cual a su vez se basa en la Regla 11 de las Reglas de Procedimiento Criminal federal[44].

Según el texto de la Regla 81 del Proyecto, a través de una negociación pre-acordada, un acusado hubiera podido hacer alegación de culpabilidad por el "...delito de que se le acusa, por un grado inferior de dicho delito o por un delito relacionado incluido en el delito imputádole...". (Enfasis suplido.)[45] Al incorporar esta Regla en el caso de Mojica Cruz, ante, este Tribunal varió su lenguaje y resolvió permitir que el acusado se declarase culpable, además del delito por el cual se le acusó, "...por uno de

---

[42] 34 L.P.R.A. Ap. II, R. 72.

[43] Informe sobre Reglas de Procedimiento Criminal de Puerto Rico sometido por el Comité de Procedimiento Criminal de la Conferencia Judicial de 1978.

[44] Fed. R. Crim. P. 11.

[45] Informe sobre Reglas de Procedimiento Criminal de Puerto Rico sometido por el Comité de Procedimiento Criminal de la Conferencia Judicial de 1978.

grado inferior o relacionado...". (Enfasis suplido). Pueblo v. Mojica Cruz, ante, a la pág. 579.[46]

Nótese la distinción que hicimos entre la regla propuesta y la adoptada. Mediante esta última, el acusado puede declararse culpable de un delito relacionado con el originalmente imputado sin estar incluido en éste. Aunque no expusimos las razones para hacer tal distinción, resulta claro que la misma ofrece más opciones a las partes al momento de efectuar una alegación pre-acordada. También es evidente que este Tribunal optó por acoger, en cuanto a este aspecto, el texto de la Regla 11 de Procedimiento Criminal federal la cual dispone: "[t]he attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following...". (Enfasis suplido).[47]

Ahora bien, no obstante lo expuesto, somos del criterio que cuando se trate de una alegación pre-acordada en la cual el acusado hace alegación por un delito

---

[46] Cuando nuestra legislatura promulgó la citada Regla 72, lo hizo copiando "verbatim" el texto que este Tribunal redactara en Pueblo v. Mojica Cruz, ante. De la Exposición de Motivos de la ley mediante la cual se estatuyó la Regla 72, Ley Núm. 37 de 28 de junio de 1985, no surge ningún tipo de análisis jurídico sobre el contenido de la Regla. Exposición de Motivos de la Ley Núm. 37, Leyes de Puerto Rico, 1985, págs. 145-146.

[47] Fed. R. Crim. P. 11.

relacionado con el delito originalmente imputado, el tribunal debe cerciorarse de que existe <u>base suficiente en los hechos</u> para sostener que el acusado sería culpable de dicho delito si los hechos se probaran más allá de duda razonable en un juicio plenario. Obviamente igual requerimiento existe para una alegación pre-acordada por el delito alegado en la acusación o denuncia, o por uno de grado inferior, o por uno menor incluido al alegado en la denuncia o acusación. Exigir al tribunal que acepte solamente alegaciones pre-acordadas que tengan base suficiente en los hechos, unido a que se formulen voluntaria, consciente e inteligentemente, evita que se prive a los acusados de su libertad sin un debido proceso de ley.

No podemos enfatizar lo suficiente que el procedimiento que permite la negociación para obtener alegaciones pre-acordadas puede influir sobre un acusado, que entiende es inocente, para que se declare culpable. Ante este peligro, preferimos limitar las posibilidades de que se llegue a una alegación pre-acordada. Este Tribunal está consciente de que este procedimiento favorece al Estado, en términos de economía procesal, y lo libera de la carga de establecer más allá de duda razonable la culpabilidad del acusado. Sin embargo, las ventajas administrativas que tiene el sistema de alegaciones pre-acordadas, no pueden soslayar derechos constitucionales de los acusados. Como apuntáramos anteriormente, "[e]l día en

que los derechos constitucionales de nuestros conciudadanos estén a expensas de consideraciones de naturaleza económica será el día en que la justicia habrá dejado de constituir la razón de ser de nuestro ordenamiento". Pueblo v. Robles González, 125 D.P.R. 750, 765 (1990).

En el presente caso, el Ministerio Público presentó en contra de Santiago Agricourt dos cargos por haber cometido el delito de oferta de soborno[48]. Por medio de la alegación pre-acordada, estos cargos fueron reducidos a dos cargos por infringir el delito de omisión en el cumplimiento del deber.[49] Los elementos de este último delito son: (a) que el autor del delito sea un funcionario o empleado público o persona que desempeñe algún cargo de confianza o empleo público; y (b) que tal autor omita voluntariamente cumplir

_____

[48] Este delito esta tipicado en el Artículo 212 del Código Penal, 33 L.P.R.A. sec. 4363., y establece lo siguiente:

"Toda persona que directamente o por persona intermedia diere o prometiere a un funcionario o empleado público, o jurado, o árbitro, o cualquier otra persona autorizada en ley para oír o resolver una cuestión o controversia, o a un testigo, dinero o cualquier beneficio, con el fin previsto en los artículos 209 al 211, será sancionada con la pena de reclusión fijada en el artículo correspondiente."

[49] El Artículo 214 del Código Penal, 33 L.P.R.A. sec. 4365, prevé que:

"Toda omisión voluntaria en el cumplimiento de un deber impuesto por la ley o reglamento a un funcionarios o empleado público, o persona que desempeñare algún cargo de confianza o empleo público de no existir alguna disposición señalando la pena correspondiente a dicha omisión, se penará con reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del Tribunal."

con un deber impuesto por la ley o reglamento. La conducta

imputada al acusado en la denuncia fue la siguiente:

> "El referido acusado, ANGEL LUIS SANTIAGO C/P
> WICHI, allá en o para el día 30 de septiembre de
> 1993, en San Juan, Puerto Rico,..., ilegal,
> intencionalmente, voluntaria, maliciosa y
> criminalmente, dio directamente a los Alguaciles
> Mario Sánchez y Fernando Collazo, que son
> funcionarios o empleados públicos, dinero con el
> fin de diligenciar una orden de arresto que había
> contra el Sr. Eduardo Aponte Vázquez, que es un
> acto regular de[l] cargo o función."

> "El referido acusado, ANGEL LUIS SANTIAGO C/P
> WICHI, allá en o para el día 14 de octubre de 1993,
> en San Juan, Puerto Rico,..., ilegal,
> intencionalmente, voluntaria, maliciosa y
> criminalmente, dio directamente a los Alguaciles
> Mario Sánchez y Fernando Collazo, que son
> funcionarios o empleados públicos, dinero con el
> fin de diligenciar una orden de arresto que había
> contra la Sra. Angela L. Llorens Escalera, que es
> un acto regular de[l] cargo o función."

De lo anterior, resulta meridianamente claro, que era

totalmente improcedente en derecho la alegación de

culpabilidad del acusado por el delito de "omisión en el

cumplimiento del deber", ya que éste, como reiteradamente

ha alegado, no es ni funcionario o empleado público ni ha

omitido cumplir con un deber relacionado con algún cargo

público.

Por otra parte, contra Santiago Agricourt, el

Ministerio Público también presentó un cargo por el delito

de amenazas contra un funcionario del Sistema de Justicia[50],

el cual fue posteriormente reducido a un cargo

---

[50] El delito de conspiración, amenazas o tentativas contra funcionarios del Sistema de Justicia o sus familiares está codificado en el Artículo 239-B del Código Penal, 33 L.P.R.A. sec. 4435-B, el cual dispone que:

por cometer desacato.[51]

---

"Toda persona que conspire, amenace, atente o cometa un delito contra la persona o propiedad de un policía, alguacil, oficial de custodia, agente investigador u otro agente del orden público, fiscal, juez, magistrado, o cualquier otro funcionario público relacionado con la investigación, arresto, acusación, procesamiento, convicción o detención criminal, contra los familiares dentro del cuarto grado de consanguinidad o segundo de afinidad de estos funcionarios, y tal conspiración, amenaza, tentativa de delito contra la persona o propiedad surgiere en el curso o como consecuencia de cualquier investigación, procedimiento, vista o asunto que esté realizando o haya realizado en el ejercicio de las responsabilidades oficiales asignadas a su cargo, excepto en el caso de amenazas, será sancionado con pena de reclusión por un término fijo de diez (10) años. De mediar circunstancias agravantes la pena fija podrá ser aumentada hasta un máximo de quince (15) años. De mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de cinco (5) años. En casos de amenazas será sancionado con pena de reclusión de quince (15) años. De mediar circunstancias agravantes la pena fija podrá ser aumentada hasta un máximo de ocho (8) años. De mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de cuatro (4) años."

[51] El Artículo 235 del Código Penal, 33 L.P.R.A. sec. 4431, prescribe que:

"Será sancionada con pena de reclusión que no excederá de noventa (90) días o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal, toda persona que realizare cualesquiera de los siguientes actos:
(a) Perturbare el orden, causare ruido o disturbio o se condujere en forma desdeñosa o insolente hacia un tribunal de justicia o un magistrado durante el desarrollo de una investigación judicial o una sesión tendiendo con ello directamente a interrumpir los procedimientos o menoscabar el respeto debido a su autoridad, o en presencia del jurado mientras esté en estrados o deliberando en alguna causa.
(b) Desobediencia a cualquier decreto, mandamiento, citación u otra orden legal expedida o dictada por algún tribunal en un pleito o proceso en que estuviere conociendo.

El delito de desacato criminal puede configurarse de suscitarse cualquiera de las siguientes conductas antijurídicas: (a) perturbar el orden, causar ruido o disturbio o conducirse de manera desdeñosa hacia un tribunal durante el transcurso de un procedimiento judicial, interrumpiendo los mismos o menoscabando el respeto debido a su autoridad; (b) desobedecer cualquier orden, decreto, mandamiento o citación expedida o dictada por un tribunal; (c) resistirse, ilegal y contumazmente, a prestar juramento o a llenar los requisitos como testigo en un procedimiento judicial o negarse, injustificadamente, a contestar algún interrogatorio legal, después de haber jurado o llenado dichos requisitos; (d) criticar, injuriosa e infamatoriamente, los decretos, órdenes, sentencias o procesos de cualquier tribunal con el propósito de desacreditar al tribunal o al juez; o (e) publicar, voluntariamente, cualquier informe falso o manifiestamente inexacto sobre procedimientos judiciales. El desacato criminal puede ser directo, en aquellas categorías del tipo legal en que se comete en presencia del juez; o indirecto,

---

(c) Resistencia ilegal y contumaz por parte de una persona a prestar juramento o llenar los requisitos como testigos en una causa pendiente ante cualquier tribunal, o se negare sin excusa legítima a contestar cualquier interrogatorio legal, después de haber jurado o llenado dichos requisitos.
(d) Crítica injuriosa o infamatoria de los decretos, órdenes, sentencias o procedimientos de cualquier tribunal tendente a desacreditar al tribunal o a un magistrado.
(e) La publicación voluntaria de cualquier informe falso o manifiestamente inexacto sobre procedimientos judiciales."

en todos los demás casos.[52] Ahora bien, una característica esencial de este delito es que la parte perjudicada siempre va a ser el tribunal. En otras palabras, se trata de una ofensa en contra de la dignidad y autoridad de los tribunales de justicia.[53]

En el caso de marras, la denuncia presentada en contra de Santiago Agricourt recoge la siguiente conducta alegadamente constitutiva del delito de desacato:

> "El referido acusado, ANGEL LUIS SANTIAGO AGRICOURT C/P WICHI, allá en o para el día 5 de enero de 1994, en el Centro Judicial de San Juan,..., ilegal, maliciosa, criminalmente, a sabiendas e intencionalmente, amenazó o cometió el delito de alteración a la paz contra la persona del Alguacil Fernando Collazo González. El delito ocurrió como consecuencia o relacionado al arresto y procesamiento del acusado en otro caso donde el Alguacil Collazo es principal testigo de cargo en su contra. Debido a la conducta del acusado el Alguacil Collazo se sintió amenazado."

Por otro lado, del expediente de este caso surge una declaración jurada que prestó la víctima del delito imputado, el Alguacil Fernando Collazo González, en la cual éste relata su versión de los hechos:

> "...siendo el testigo en estos casos, fui amenazado por el Sr. Angel Luis Santiago, padre, c/p Wichi el día 5 de enero de 1994, casos que también están pendientes de juicio en el mismo Tribunal de San Juan donde se originó este incidente de amenaza contra mi persona. Que en esta ocasión el Sr. Angel Luis Santiago me siguió por todo el pasillo que ubica en el sótano del Centro Judicial de San Juan profiriendo palabras amenanzantes contra mi persona. Que yo intenté esquivarlo y subí hasta el cuarto piso y el señor Santiago me siguió hasta

---

[52] D. Nevares-Muñiz, Código Penal, 4ta ed., Hato Rey, Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., 1997, pág. 387.
[53] Ibid.

> allí. Que todo esto sucedió en presencia de varios alguaciles de Seguridad y ninguno de ellos intervino sintiéndome amenazado y desprovisto de seguridad...."

No hay que poseer un vasto conocimiento en derecho para concluir que de lo anterior se desprende que los actos cometidos por el acusado no configuraron el delito de desacato criminal. La conducta imputada, aun cuando fue admitida por Santiago Agricourt, no cae dentro de ninguna de las modalidades del desacato anteriormente reseñadas.

Debido a que no existía base suficiente en los hechos para sostener la alegación de culpabilidad por los delitos imputados en la alegación pre-acordada, erró el Tribunal de Primera Instancia al aceptarla. De igual manera, incidió en error el Tribunal de Circuito de Apelaciones al determinar que la alegación pre-acordada fue válida en derecho.

Lo anterior dispone del segundo error aducido por el peticionario.

V

En su cuarto señalamiento de error, el peticionario cuestiona la determinación del Tribunal de Circuito de Apelaciones a los efectos de que el acusado, "...al consentir o solicitar afirmativamente que se redujeran los delitos graves de las acusaciones originales a delitos menores graves, renunció a su derecho de plantear que los delitos menores no estaban incluídos (sic) o relacionados con los originales". Veamos.

De conformidad con las normas de derecho procesal criminal, una sentencia dictada en casos de convicción por alegación de culpabilidad sólo será revisada mediante la oportuna interposición de un recurso de certiorari.[54] En el recurso que a tales efectos presente el acusado, sólo podrán plantearse errores referentes a la suficiencia de la acusación y la jurisdicción del tribunal, Pueblo v. Pueblo International, 106 D.P.R. 202, 208, así como cualquier otra irregularidad en el pronunciamiento de la sentencia. Pueblo v. Club Management, Inc., 88 D.P.R. 189, 192 (1963).

Sin embargo, el hecho de que un acusado haya sido convicto mediante una alegación de culpabilidad no impide un ataque directo a la validez de la alegación o colateral a la sentencia de convicción dictada como resultado de la alegación de culpabilidad.[55] La alegación de culpabilidad podrá ser atacada directamente cuando es el resultado de coacción o cuando un tribunal incumple su deber de investigar asuntos requeridos por la Constitución o por la ley.[56] Por otra parte, la alegación estaría sujeta a un ataque colateral de la sentencia si la misma no fue efectuada inteligentemente.[57]

---

[54] Regla 193 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.193; 4 L.P.R.A. sec. 22k(d).

[55] O.E. Resumill de Sanfilippo, Derecho Procesal Penal, Orford, New Hampshire, Butterworth Legal Publishers, 1993, t. 2, pág. 116.

[56] C. Whitebread, Criminal Procedure, 3rd ed., Westbury, New York, The Foundation Press, Inc., 1993, págs. 647-650.

[57] Ibid.

En el presente caso, el Tribunal de Primera Instancia no cumplió con su obligación, impuesta por ley y por la cláusula constitucional del Debido Proceso de Ley, puesto que se limitó a examinar la voluntariedad, consciencia e inteligencia del acusado al momento de hacer la alegación de culpabilidad. Debió además asegurarse de que los delitos incluidos en la alegación pre-acordada encontraban base en los hechos por los cuales se formuló acusación.

Por lo tanto, erró el Tribunal de Circuito de Apelaciones al concluir que al participar en la alegación pre-acordada, el peticionario renunció a cuestionar ante dicho foro apelativo que la misma se efectuó de acuerdo con la ley y la Constitución.[58]

VI

Arguye, además, Santiago Agricourt que el foro de instancia incurrió en un abuso de discreción al denegar, de plano y sin la celebración de una vista evidenciaria, su solicitud para retirar su alegación, dado que existen serias dudas sobre su culpabilidad, que éste tiene defensas meritorias y que, bajo las circunstancias en que hizo la alegación de culpabilidad, se cumplen mejor los fines de la

---

[58] En su comparecencia ante nos, el Procurador General coincidió con el acusado en cuanto a que éste no había renunciado a su prerrogativa de cuestionar la validez de su declaración de culpabilidad. Sin embargo, al entender que no había que analizar si existía una base fáctica, concluyó que la alegación fue voluntaria, inteligente, con conocimiento de consecuencias, y, por ende, válida en derecho.

justicia sometiendo el caso a la consideración de un juez o un jurado. Veamos.

La Regla 71 de las de Procedimiento Criminal[59] dispone que el tribunal tiene discreción tanto para aceptar o rechazar una alegación de culpabilidad como para permitir el retiro de la misma una vez la haya aceptado. Pueblo v. Franco, 70 D.P.R. 786, 789 (1950); Betancourt Rojas v. Tribunal Superior, 90 D.P.R. 747, 757 (1954). Consecuentemente, una vez ha impartido su aprobación a una negociación pre-acordada, descansa en la sana discreción del tribunal si permite el retiro de la alegación en cualquier momento previo a dictar la sentencia. En ausencia de un claro abuso de discreción, este Tribunal no derrotará ni debilitará la amplia discreción que tienen los tribunales de justicia para aceptar, rechazar o modificar una alegación pre-acordada, Pueblo v. Marrero Ramos, Rivera López, ante, a la pág. 97, o para permitir que se retire una alegación de culpabilidad. Pueblo v. Franco, ante, a la pág. 789; Betancourt Rojas v. Tribunal Superior, ante, a la pág. 757. La razón para ello es sencilla; se presume que, antes de impartir su aprobación, el tribunal verificó que el acusado formuló la alegación de culpabilidad voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de su alegación; que la misma era beneficiosa para la administración de la

---

[59] 34 L.P.R.A. Ap. II, R. 71.

justicia; y que se obtuvo de conformidad con el derecho y la ética.[60]

Nuestra jurisprudencia ha establecido que abusa de su discreción un tribunal que se niega a permitir que un acusado retire su alegación de culpabilidad si éste demuestra que hizo la misma: (a) por incomprensión de la ley y de los hechos; (b) por una falsa representación del abogado defensor o del fiscal o cualquier otra autoridad; (c) cuando surge alguna duda de la culpabilidad del acusado; (d) que el acusado tiene alguna defensa meritoria que merezca ser considerada por el jurado o el juez; o (e) que se cumplen mejor los fines de la justicia sometiendo el caso a la consideración del juez o jurado para su fallo. Betancourt Rojas v. Tribunal Superior, ante, a la pág. 757. Así también procede que se retire la alegación de culpabilidad cuando la misma se ha debido a coacción, fraude o inadvertencia. Pueblo v. Franco, ante, a la pág. 789; Betancourt Rojas v. Tribunal Superior, ante, a la pág. 757.

En el caso de autos, Santiago Agricourt no alegó desconocimiento de la ley y los hechos de este caso. Tampoco probó que su abogado o el Ministerio Público le hubiesen engañado. Además, a preguntas del tribunal de instancia, expresó su conformidad con el asesoramiento legal recibido y que entendía los hechos por los cuales se le acusó y los delitos imputados en su contra.

---

[60] 34 L.P.R.A. Ap. II, R. 70 y 72.

Por otra parte, no produjo prueba exculpatoria o la existencia de alguna defensa afirmativa, habiéndose limitado a aseverar en uno de sus escritos que el testigo de cargo principal no le mereció credibilidad al tribunal en otros casos relacionados con los hechos del suyo. Esto de por sí no constituye prueba exculpatoria, toda vez que el Tribunal de Primera Instancia estaría en igual posición de evaluar dicho testimonio, no estando obligado por la determinación de credibilidad hecha por otra sala del tribunal.

No obstante lo anterior, Santiago Agricourt sí alegó ante el Tribunal de Primera Instancia hechos que producen duda sobre su culpabilidad por los delitos imputados en la alegación pre-acordada. En la moción que radicara el peticionario el 19 de diciembre de 1995, éste indicó al foro de instancia que su alegación de culpabilidad era contraria a derecho, puesto que los hechos que le fueron imputados no configuraban los delitos por los cuales hizo alegación de culpabilidad. El tribunal, pudiendo entrar a considerar este planteamiento, hizo caso omiso a los reclamos del peticionario y se negó a pasar juicio sobre los mismos. Somos del criterio que, al así proceder, dicho foro judicial incurrió en abuso de discreción. Realmente no podemos avalar este tipo de situación no sólo por consideraciones de debido proceso de ley constitucional, sino porque por imperativo de las propias Reglas de

Procedimiento Criminal[61], el tribunal debió verificar la validez jurídica de la alegación pre-acordada con antelación a impartir su aprobación. Conforme hemos sostenido "[u]na actitud judicial sistemática de rechazo o de aceptación sin ponderación de las circunstancias que rodean el delito y la seriedad de los daños causados es contraria a la letra y a la idea que inspira la norma procesal". Pueblo v. Vázquez, 120 D.P.R. 369, 378 (1988); Pueblo v. Marrero Ramos, Rivera López, ante, a la pág. 98.

Por todo lo expuesto, resolvemos que erró el foro apelativo al confirmar la negativa del tribunal de instancia de no permitir que el peticionario retirara su alegación de culpabilidad.

## VII

Por los fundamentos anteriormente expuestos, procede expedir el auto de certiorari y dictar Sentencia revocatoria de las resoluciones recurridas; anulándose la alegación pre-acordada de culpabilidad realizada en el presente caso y devolviéndose el mismo al Tribunal de Primera Instancia para

---

[61] 34 L.P.R.A. Ap. II, R. 72.

la continuación de los procedimientos consistentes con lo

aquí resuelto.[62]

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[62] Sobre el tercer señalamiento aducido por el peticionario, que erró el Tribunal de Circuito de Apelaciones al concluir que éste no aportó suficientes elementos de juicio para poder concluir que los actos enmarcados en el delito de desacato pudieran o no estar incluidos en el de amenazas, réstanos decir que determinar si un delito está incluido dentro de otro es una determinación en derecho, que puede hacerse sin tomar en consideración la situación fáctica del caso. Por último, el Procurado General estuvo de acuerdo con el acusado en cuanto a este error.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-96-12          Certiorari

Angel L. Santiago Agricourt

    Peticionario

**SENTENCIA**

San Juan, Puerto Rico, a 8 de diciembre de 1998

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones en el presente caso mediante la cual dicho foro apelativo intermedio confirmó la resolución del tribunal de instancia denegatoria de la moción solicitando retirar la alegación de culpabilidad; devolviéndose el mismo al foro de instancia para la continuación de procedimientos ulteriores consistentes con lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri concurren en el resultado sin opinión escrita. El Juez Asociado señor Negrón García inhibido.

                            Isabel Llompart Zeno
                           Secretaria del Tribunal Supremo