EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Héctor O'Neill García<br><br>Recurrido | 2022 TSPR 37<br><br>208 DPR ____ |

Número del Caso:  AC-2020-10


Fecha: 1 de abril de 2022


Tribunal de Apelaciones:

    Panel IX


Panel sobre el Fiscal Especial Independiente:

    Lcdo. Miguel Colón Ortiz
    Fiscal Especial Independiente

    Lcda. Leticia Pabón Ortiz
    Fiscal Delegada


Abogado de la parte recurrida:

    Lcdo. Harry N. Padilla Martínez


Materia:  Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.                AC-2020-0010

Héctor O'Neill García

    Recurrido

RESOLUCIÓN

En San Juan, Puerto Rico, a 1 de abril de 2022.

Luego de evaluar el *Escrito en cumplimiento de orden* presentado por la parte recurrida y la *Moción en cumplimiento de orden* presentada por la parte peticionaria, damos por cumplida nuestra orden de 15 de marzo de 2022. Procedemos a anular el auto en este caso porque este se tornó en un pleito colusorio.

Hemos definido un pleito colusorio como "aquel donde no hay controversias entre las partes y el mismo se presenta con el fin de lograr una determinación judicial que sea obligatoria". Noriega v. Hernández Colón, 135 DPR 406, 443 (1994). En E.L.A. v. Aguayo, 80 DPR 552, 585 (1958) expresamos:

> El tribunal debe estar alerta para distinguir el caso ficticio o colusorio en el cual sólo se pretende obtener información o una opinión, o en el cual el demandado aparece como una figura decorativa con el único propósito de darle jurisdicción, de aquellos en que hay derechos en controversia con el fin de lograr una determinación obligatoria.

Por su parte, en Noriega v. Hernández Colón, supra, pág. 445, dijimos que a nivel federal, en United States

v. Johnson, 319 US 302, 306 (1943), se definió un pleito colusorio "como aquel que carece de un sentido adversativo, donde no existe un antagonismo real en relación con los derechos a ser adjudicados, lo cual es una garantía esencial de la integridad de los procesos judiciales, e indispensable en la adjudicación de las controversias que envuelven asuntos constitucionales". Lo que se busca con la doctrina de pleito colusorio es asegurarse que exista una "controversia genuina y viva, en la cual estén presentes intereses opuestos, y que al ser resuelta afecte las relaciones jurídicas de los litigantes". E.L.A. v. Aguayo, supra, pág. 584.

En su comparecencia, la parte recurrida, en cumplimiento con lo que este Tribunal solicitó el 15 de marzo de 2022, presentó el contenido del acuerdo firmado por todas las partes -fiscales, defensa y el acusado- que todavía no se había presentado a los tribunales. De entrada, nótese que el inciso 7 del acuerdo dispone que "El Ministerio Público hace constar que la alegación preacordada aquí informada cuenta con la aprobación del Panel sobre Fiscal Especial Independiente". Moción condicionada sobre alegación preacordada, párr. 7. Además, el acuerdo alcanzado está condicionado a que este Tribunal confirme o revoque la determinación del Tribunal de Apelaciones.

Por un lado, si confirmáramos al foro intermedio, el acuerdo dispone que el "caso se mantendrá desestimado y el mismo habrá terminado". Íd. párr. 5(b). Ahora bien, si revocáramos la determinación del foro intermedio, el acuerdo dispone que "el Pueblo enmendará el pliego acusatorio para que impute una infracción al Art. 122 del Código Penal de 2004, 33 LPRA § 4750 (Derogado 2012) […] Hecha la enmienda, el acusado registrará alegación de culpabilidad por el delito así enmendado". Moción condicionada sobre alegación preacordada, párr. 5(c).

Así pues, producto del acuerdo entre las partes, no importa lo que hubiésemos resuelto, el señor O'Neill García dejaría de estar expuesto al delito de actos lascivos, Art. 144 del Código Penal de 2004, por el que fue acusado y es objeto de revisión en este caso. No estaría expuesto porque el fiscal no puede (por prescripción) o porque no quiere (aunque no esté prescrito). Por lo tanto, es forzoso concluir que estamos ante un pleito colusorio con el único fin de obtener una determinación judicial sobre la imprescriptibilidad de un delito (Art. 144 del Código Penal de 2004), al cual al final de cuentas, no importa lo que resolvamos, el acusado no estará expuesto. Esto tendría como resultado disipar las dudas del PFEI sobre la imprescriptibilidad del mencionado artículo y poder utilizar nuestra decisión para futuras ocasiones. No obstante, recordemos que los tribunales "no son un cuerpo asesor ni

consultor". <u>Noriega v. Hernández Colón</u>, <u>supra</u>, pág. 441. Estamos para resolver casos y controversias vivas y con efectos reales entre las partes.

En nuestra Resolución de 15 de marzo de 2022 solicitamos la información que las partes nos dieron sobre el acuerdo entre ellas. Como resultado, evitamos emitir una opinión consultiva. El día que vuelvan a surgir dudas sobre la prescripción del Art. 144 del Código Penal de 2004 o de cualquier otro delito en el desempeño de la función pública, las partes afectadas con una controversia real y viva podrán presentar un recurso legal y los tribunales procederán a resolverlo conforme a derecho. Este no es ese caso.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite un Voto Particular Disidente. El Juez Asociado señor Estrella Martínez emite un Voto Particular Disidente. El Juez Asociado señor Colón Pérez emite un Voto Particular Disidente.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                AC-2020-0010

Héctor O'Neill García

    Recurrido

La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular Disidente.

En San Juan, Puerto Rico, a 1 de abril de 2022.

El Tribunal expidió este caso para resolver si el delito de actos lascivos por el cual se acusó al Sr. Héctor O'Neill García prescribió o si, por el contrario, es imprescriptible por haberse cometido por un funcionario público mientras ejercía una función pública. Hoy, una mayoría anuló el auto por entender que entre el Panel sobre el Fiscal Especial Independiente (PFEI) y el Sr. Héctor O'Neill García existe colusión al continuar litigando este caso tras suscribir un "preacuerdo". Concluyó, por tanto, que el caso no es justiciable por ser uno consultivo. Se equivoca.

La realidad es que el documento sometido por la defensa del señor O'Neill García titulado "Moción

Condicionada sobre Alegación Preacordada", no cumple con lo dispuesto en la Regla 72 de Procedimiento Criminal, infra, y no es vinculante. No es evidencia de una transacción ejecutable y, a lo sumo, es un borrador de acuerdo futuro, por lo que no priva de jurisdicción a este Tribunal. Basta con ver que el alegado "preacuerdo" no puede surtir efecto sin que este Tribunal resuelva la controversia que se nos trajo.

Cualquier conversación o negociación entre las partes —pasada o futura— así como cualquier acuerdo al que finalmente lleguen, estaba condicionada a lo que resolviera este Tribunal. Difícil entonces concluir que no existe una controversia real y viva cuando ambas partes comparecieron ante este Tribunal para argumentar que las conversaciones y el "acuerdo" al que se hace referencia en un documento —que se nos sometió en un sobre sellado, y que no ha sido aprobado por el PFEI[1]— no dan por concluido el pleito. Por el contrario, tanto el FEI como el señor O'Neill García argumentaron que el documento suscrito no está maduro y que estamos ante una controversia justiciable. Ambas partes solicitaron que resolviéramos en los méritos. Más aún, a través de todo el litigio han defendido sus posturas antagónicas respecto al asunto de la prescripción del delito

---

[1] Si bien el acuerdo que firmaron las partes dice que cuenta con la aprobación del PFEI, **el Fiscal Especial Independiente enfatizó en su escrito ante nos que el PFEI no ha dado su anuencia a que el supuesto acuerdo se presente como una alegación preacordada.** Ello, claramente pues se trata de un borrador de acuerdo, que según su propio título indica está condicionado a nuestra determinación.

de actos lascivos por el que se encontró causa contra el señor O'Neill García.

Por otro lado, la mayoría argumenta que debido al escrito que suscribieron las partes, nuestra decisión no tendrá efecto alguno en el caso criminal contra el señor O'Neill García. Se equivocan. Aún si supusiéramos que el documento que las partes firmaron fue avalado por el PFEI, y asumiendo que este fuera aceptado por el juez o la jueza del Tribunal de Primera Instancia —un hecho incierto—, el señor O'Neill García, según indica el documento al que se alude, **se declararía culpable del delito de *agresión grave*.** Esto en sí mismo muestra que existiría un claro efecto jurídico en este caso criminal: la aceptación de culpabilidad de un acto delictivo que permanecería en el récord del acusado. Además, tendría que pagar la pena especial al Fondo de Compensación y Servicios a las Víctimas y Testigos de Delito; y cumplir con cualquier otra condición que imponga el tribunal. Por el contrario, al anular el auto y no intervenir en este caso, se pone **fin a este caso criminal contra el señor O'Neill García, sin ninguna consecuencia para él**.

Si nuestro dictamen en los méritos no tuviera efecto alguno, según indica la mayoría, ¿no serían **idénticos** ambos desenlaces? ¿Por qué bajo un escenario se tiene que declarar culpable el acusado y en el otro se archivan los cargos? Sencillo, porque no es un caso colusorio. Es justiciable y nuestra intervención es esencial para su desenlace.

La alegación de colusión es tan grave, que si este Tribunal en efecto concluyó que el FEI, en contubernio con el señor O'Neill García, han actuado para fingir ante este Tribunal que hay una controversia vigente, debió haber impuesto sanciones severas a ambas partes y consignar ante el País la razón por la cual la víctima en este caso no tendrá acceso a que el sistema de justicia criminal atienda su denuncia. Más aún, si la mayoría concluyó que el FEI permitió una pantomima al presentar dos caras: una ante este Tribunal y el Pueblo, y otra en cuartos oscuros, no debería premiarle con el simple acto de anular el auto.

No obstante la actuación incomprensible del FEI de suscribir un mal llamado "preacuerdo" inoficioso, no debió provocar que este Tribunal renunciara a atender el caso. Lo que es inescapable de la determinación de hoy es que, con la acción de la mayoría, una presunta víctima de actos lascivos se quedó sin oportunidad de justicia. La determinación provoca además que un funcionario público acusado de un delito sexual reprensible salga por la puerta ancha sin siquiera enfrentar al sistema de justicia. No importa el fundamento, al final este Tribunal avala la desestimación del cargo de actos lascivos contra el señor O'Neill García sin que se sopesaran los méritos de la controversia.

Estimo que este Tribunal debió expresarse sobre esta controversia novel de la prescripción del delito de actos lascivos cuando lo comete un funcionario público. De haberlo hecho, por las razones que se fundamentan más adelante, era

inevitable concluir que el delito de actos lascivos que se le imputó al señor O'Neill García no prescribió. Esta conclusión hace aún más frustrante la decisión de hoy y por eso disiento enérgicamente.

## I

Los hechos de este caso son los siguientes. El 12 de diciembre de 2017 el Ministerio Público —por conducto de la Oficina del Panel Sobre el Fiscal Especial Independiente— presentó una denuncia contra el señor O'Neill García por cometer el delito de actos lascivos estatuido en el Art. 144 del Código Penal de 2004, infra. Según detalla la denuncia, los hechos imputados tuvieron lugar el 22 de diciembre de 2011. En específico, la denuncia lee como sigue:

> El referido imputado, HÉCTOR O'NEILL GARCÍA, mientras se desempeñaba como Alcalde del Municipio de Guaynabo, Puerto Rico, allá en o para el 22 de diciembre de 2011, y en Guaynabo que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Bayamón, ilegal, voluntaria, criminal e intencionalmente, a propósito y con conocimiento y sin intentar consumar el delito de agresión sexual, cometió el delito de actos lascivos en la persona de Mayra Vázquez Santiago, quien era su subalterna y se desempeñaba como Técnica de Rescate en el Departamento de Manejo de Emergencias en el Municipio de Guaynabo, consistente en que mediante el empleo de fuerza, violencia o intimidación, y en contra de la voluntad de la víctima le tocó los senos y las nalgas; le lamió el área del abdomen; le subió la camisa y trató de besarla en la boca. El imputado sometió a la víctima a un acto sin su consentimiento que tenía el propósito de despertar, excitar y satisfacer el deseo sexual del imputado. Estos hechos son contrarios a la ley, a la moral, a la honestidad y a la dignidad del Pueblo de Puerto Rico. (Énfasis suprimido). *Denuncia*, Apéndice de la *Apelación*, pág. 1.

El mismo día en que se presentó la denuncia se halló causa probable para el arresto del señor O'Neill García por el delito imputado. Más adelante también se halló causa probable para acusar por ese delito. El 16 de mayo de 2018 el Ministerio Público presentó la acusación correspondiente, la cual contenía el mismo lenguaje que la denuncia en cuanto a los hechos constitutivos del delito imputado.

El 20 de septiembre de 2019 el señor O'Neill García presentó un *Escrito solicitando sobreseimiento del proceso por extinción de la causa de acción*. Adujo que el delito que se le imputó estaba prescrito al momento de hallarse causa probable para arresto en su contra, por lo que procedía desestimar el cargo por actos lascivos. Expuso que el delito que se le imputó estaba clasificado como uno grave de tercer grado, por lo que le aplicaba el término prescriptivo de cinco (5) años que establecía el inciso (a) del Art. 99 del Código Penal de 2004, el cual disponía ese término para delitos graves de segundo a cuarto grado.

El Ministerio Público se opuso. Adujo que el Art. 99 del Código Penal de 2004 no aplicaba a los hechos de este caso pues, constituía un delito grave cometido por un funcionario o empleado público en el desempeño de la función pública. Como tal, estaba comprendido en el Art. 100 del Código Penal de 2004, el cual establecía que ese tipo de delitos no prescribe.

El señor O'Neill García replicó. Rechazó que el Art. 100 del Código Penal de 2004 aplicara al caso y arguyó que

del historial legislativo de esa disposición legal, así como de aquella que la precedió, surgía que la intención del legislador era establecer la imprescriptibilidad de delitos que —por su naturaleza— constituyeran actos de corrupción y que fuesen delitos contra la función pública, el erario, la función judicial o la fe pública. Así, planteó que el delito de actos lascivos no constituye un acto de corrupción ni es un delito contra la propiedad pública, el erario, la función judicial o la fe pública, por lo que no es uno que se comete en el desempeño de la función pública. Razonó que, ante ello, no correspondía aplicar el Art. 100 del Código Penal de 2004 a su caso.

El 24 de octubre de 2019 el Tribunal de Primera Instancia emitió y notificó una Resolución en la que denegó desestimar la acusación por actos lascivos. Determinó que, según alegó el Ministerio Público, la acción penal contra el señor O'Neill García era imprescriptible, de conformidad con el Art. 100 del Código Penal de 2004. Razonó que el acusado era un funcionario público al momento de los hechos, los cuales tuvieron lugar en la oficina del señor O'Neill García -en la alcaldía del municipio de Guaynabo- mientras este realizaba las funciones inherentes a su cargo como autoridad superior del Departamento de Manejo de Emergencias del municipio y jefe de la víctima.

En desacuerdo, el señor O'Neill García presentó una petición de *certiorari* ante el Tribunal de Apelaciones. Argumentó que el foro primario erró al interpretar el Art.

100 del Código Penal de 2004 de una manera extensiva, que no se ajustaba al historial legislativo del estatuto. Además de reproducir los argumentos que adujo ante el Tribunal de Primera Instancia, planteó que un acto lascivo no era una actividad inherente realizada por un alcalde en el ejercicio de su cargo, por lo que no era un delito grave cometido "en el desempeño de la función pública", según requería el Art. 100 del Código Penal de 2004 para que fuese aplicable.

El 20 de diciembre de 2019 el Tribunal de Apelaciones notificó una *Sentencia* en la cual revocó al foro primario. Razonó que para concluir que el delito era imprescriptible al amparo del Art. 100 del Código Penal de 2004 no era suficiente que el delito lo cometiera un funcionario o empleado público ni que se cometiera mientras el funcionario público desempeñaba su función. Interpretó que, por el contrario, se debía tratar de un acto relacionado a las funciones y deberes de su cargo, y debía involucrar actos de corrupción gubernamental. Concluyó entonces que, por no ser el delito de actos lascivos un acto de corrupción relacionado al desempeño de la función pública de un alcalde municipal, no era imprescriptible. En cambio, le aplicaba el término prescriptivo de cinco (5) años que establecía el Art. 99(a) del Código Penal de 2004, el cual había transcurrido cuando se halló causa probable para arresto contra el acusado.

El 17 de enero de 2020 el Ministerio Público recurrió a este Foro mediante recurso de apelación. En esencia, reprodujo el argumento que expuso ante los foros recurridos

sobre la aplicabilidad del Art. 100 del Código Penal de 2004 a los hechos del caso. Acogimos el recurso como una petición de *certiorari* y expedimos en reconsideración. Posteriormente, cada parte presentó su alegato. El Ministerio Público reiteró que la interpretación del Tribunal de Primera Instancia era acertada, ya que se ajustaba a la intención legislativa y el texto claro de la ley. Además, arguyó que, contrario a lo que concluyó el Tribunal de Apelaciones, los hechos que se le imputaron al acusado constituían actos de corrupción, pues el señor O'Neill García se aprovechó de su cargo con el fin de someter a su subalterna a actos lascivos degradantes y violatorios de la dignidad humana. Sostuvo que los actos de corrupción no se limitan al abuso del poder público para obtener beneficios económicos.[2]

Por su parte, el señor O'Neill García planteó nuevamente que el Art. 100 del Código Penal de 2004 no tiene el alcance que el foro primario le adscribió. También argumentó que era incorrecto pretender resolver la controversia sobre prescripción a base de los hechos que se alegaron en el pliego acusatorio, tales como el cargo que él ocupaba o el empleo de la víctima, por no ser estos elementos del delito de actos lascivos. Adujo que lo determinante para resolver la controversia de prescripción en este caso era únicamente: (1) la fecha de los hechos imputados; (2) la

---

[2] Para apoyar lo anterior, citó nuestros pronunciamientos recientes en Pueblo v. Arlequín Vélez, 204 DPR 127 (2020).

fecha en que se determinó causa probable para arresto; (3) si el delito imputado es grave o menos grave; (4) si la persona imputada es un funcionario o empleado público, y (5) si los actos se desplegaron por ser inherentes al desempeño de la función pública. Postuló que, para que se satisficiera este último requisito, el delito tenía que ser contra la propiedad pública, la función pública, el erario, la función judicial o la fe pública. Alegó que como el delito de actos lascivos no estaba clasificado como uno contra alguno de esos bienes jurídicos, sino contra la indemnidad sexual, no estaba comprendido en el alcance del Art. 100 del Código Penal de 2004.

Mientras el caso estaba ante nuestra consideración, el señor O'Neill García suscribió con el FEI una alegación preacordada en cuanto a otros cuatro delitos —en dos casos separados, con dos perjudicadas distintas y con hechos independientes al de este caso— que pesaban en su contra entre los cuales no se incluyó el delito de actos lascivos. Eventualmente, el foro primario acogió esa alegación preacordada y dictó Sentencia al amparo de la Regla 72 de las de Procedimiento Criminal, infra. Estos hechos, ajenos a nuestro caso, provocaron que una mayoría de este Tribunal emitiera una Resolución el 15 de marzo de 2022 en la que se le concedió al señor O'Neill García y al FEI un término de 15 días para que informaran "si [tenían] un compromiso o acuerdo adicional en este caso".

En cumplimiento, el señor O'Neill García informó que en el preacuerdo que se sometió al tribunal se consideraron únicamente los cuatro cargos pendientes, puesto que los demás se habían desestimado incluyendo el del Art. 144 del Código Penal de 2004, 33 LPRA ant. sec. 4772. Ahora bien, nos indicó que el mismo día en que firmaron el acuerdo que eventualmente se sometió como una alegación preacordada al amparo de la Regla 72 de Procedimiento Criminal, 34 LPRA Ap. II, las partes firmaron un documento confidencial que no se ha sometido ante el Tribunal de Primera Instancia.

Argumentó que el documento confidencial que firmaron las partes no había tornado académico el recurso ante nuestra consideración. Por el contrario, entendía que el caso era justiciable toda vez que no es "uno en que se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente" (citando ELA v. Aguayo, 80 DPR 552, 584 (1958)). Además, explicó que —aunque, a su juicio, el documento confidencial era legítimo — este Tribunal no lo debía considerar por tratarse de un asunto que no estaba maduro. Finalmente, el recurrido solicitó que confirmáramos la desestimación que emitió el Tribunal de Apelaciones. Es decir, que resolviéramos que el delito en su contra al amparo del Art. 144 del Código Penal de 2004, supra, está prescrito.

Por su parte, el FEI reconoció que las partes prepararon un documento confidencial. Sin embargo, enfatizó que el mismo no era vinculante toda vez que el Panel sobre el PFEI no lo había aprobado.[3] Además, podía ser retirado en cualquier momento puesto que el tribunal no estaba obligado por este ni lo había aceptado como un preacuerdo al amparo de la Regla 72 de Procedimiento Criminal, supra.

De forma similar a lo que argumentó el señor O'Neill García, el FEI reiteró que la controversia sobre la prescripción del delito de actos lascivos contra el recurrido era, a todas luces, justiciable. Sostuvo que en ninguna etapa del proceso había contemplado solicitar el archivo o desistir del caso puesto que involucra una controversia real y viva entre partes con intereses antagónicos sobre las cuales la determinación que se tome habría de tener impacto. Específicamente, porque cualquier conversación, documento o posibilidad de acuerdo entre las partes **estaba absolutamente condicionado a lo que resolviera este Tribunal.** Finalmente, el FEI solicitó que evaluáramos los planteamientos de las partes en sus alegatos y que resolviéramos que el delito de actos lascivos que subsistía

---

[3] El Art. 12 (6) de la Ley de la Oficina del Panel sobre el Fiscal Especial Independiente, 3 LPRA sec. 99s, establece que "[e]l Fiscal Especial tendrá que contar con la aprobación del Panel para poder aceptar u ofrecer alguna alegación preacordada. El Fiscal Especial solicitará al Panel su aprobación mediante un escrito que expresará los alcances y efectos de la alegación preacordada propuesta. El Panel tendrá cinco (5) días calendario para contestar la solicitud. De no contestarla dentro del término requerido la solicitud se entenderá como denegada. En aquellos casos donde haya habido negociaciones acordadas, dicha autorización certificada por el Panel tendrá que obrar en autos al momento de dictarse sentencia".

contra el señor O'Neill García no está prescrito.

Tras recibir los escritos de las partes, varios miembros de este Tribunal expresaron que a su juicio este pleito era colusorio y, sin más, procedía anular el auto. Analizaron que las partes acordaron promover el caso ante nos con el fin de obtener una opinión consultiva respecto a la imprescriptibilidad de los delitos graves cometidos por funcionarios públicos en el ejercicio de su función pública. Lo anterior, puesto que —al suscribir un acuerdo respecto al delito de actos lascivos— lo que resolviéramos no iba a tener ningún impacto en la relación jurídica de los litigantes. Nada puede ser más incorrecto. Como abundaremos más adelante, no estamos ante un pleito colusorio.

## II

La doctrina de revisión judicial se encuentra imbricada con la doctrina de justiciabilidad.[4] Conforme a este principio y al amparo de la doctrina de separación de poderes, este Tribunal se autolimita en el ejercer su poder judicial en determinadas ocasiones. Uno de los criterios que nos invitan a abstenernos de ejercer nuestro poder judicial es cuando estamos ante un pleito colusorio. Véase J.J. Álvarez González, <u>Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos</u>, Bogotá,

---

[4] En nuestra constitución no existe expresamente mencionado el criterio de "caso o controversia", pero lo incorporamos jurisprudencialmente en <u>ELA v. Aguayo</u>, 80 DPR 552 (1958). Véase R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Ed. Pubs. JTS, 1987, pág. 147.

Ed. Temis, 2009, pág. 89.

Desde ELA v. Aguayo, 80 DPR 552 (1958) se estableció que una controversia no es justiciable cuando las partes están tratando de obtener una opinión consultiva por medio de un pleito colusorio.  Hemos dicho que una opinión consultiva es:

> [L]a ponencia legal emitida por un tribunal cuando no tiene ante su consideración un caso o una controversia justiciable y cuyo resultado, por lo tanto, no es obligatorio. Así pues, la doctrina de la opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto o bajo la hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros. En fin, a los tribunales les está vedado emitir opiniones consultivas sujetas a la revisión e interpretación de las otras ramas de gobierno. (Citas depuradas). Asoc. Alcaldes v. Contralor, 176 DPR 150, 158 (2009).

En cuanto al pleito colusorio, dijimos que "[l]a esencia de esta doctrina es evitar, en ausencia de una genuina controversia entre partes opuestas, la revisión de la validez de una acción legislativa [pues] el elemento esencial de una controversia real lo constituye un interés opuesto o antagónico entre partes opuestas". Noriega v. Hernández Colón, 135 DPR 406, 443 (1994). Esa expresión emanó de la norma que aplicó la Corte Suprema de Estados Unidos en United States v. Johnson, 319 US 302 (1943)[5] y de la que se adoptó en Puerto Rico en ELA v. Aguayo, supra.

---

[5] En *United States v. Johnson*, 319 US 302 (1993), el demandante no tuvo una participación activa en el litigio, nunca fue visto y fue nominalmente representado por un abogado, por lo que, no era una

Además, hemos dicho que los tribunales solo deben atender controversias verdaderas que tengan efecto en las relaciones jurídicas de las partes:

> Las cortes no están constituidas con el fin de resolver cuestiones de derecho especulativas y abstractas, o para establecer reglas que sirvan de norma futura a las personas en sus negocios y relaciones sociales; **sino que están limitadas en su acción judicial a las verdaderas controversias en que necesariamente están envueltos los derechos legales de las partes y que pueden ser resueltos concluyentemente.** (Énfasis suplido) Bianchi v. Pierazzi et al., 25 DPR 631 (1917) (citado en ELA v. Aguayo, supra, pág. 607, esc. 30).

Lo anterior implica que las controversias verdaderas son las que envuelven los derechos jurídicos de las partes que tienen una controversia de derecho y que pueden resolverse de manera definitiva. Analizar si el Art. 100 del Código Penal de 2004, infra, le aplica al señor O'Neill García por su conducta en este caso envuelve una controversia en la que irreparablemente está imbricada la capacidad acusatoria del Estado *vis-a-vis* someter a juicio a una

---

verdadera parte adversa del litigio. Ante ello, la Corte Suprema resolvió que estaba ante un pleito colusorio:

> That interest has been adjudicated in a proceeding in which the plaintiff has had no active participation, over which he has exercised no control, and the expense of which he has not borne. He has been only nominally represented by counsel who was selected by appellee's counsel and whom he has never seen. Such a [A] suit is collusive because it is not in any real sense adversary. It does not assume the 'honest and actual antagonistic assertion of rights' to be adjudicated—a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court. United States v. Johnson, supra, en la pág. 305

persona. Lo anterior puede ser resuelto concluyentemente, pues se trata de una controversia de derecho sobre prescripción que los tribunales estamos facultados para atender. En palabras de ELA v. Aguayo, supra, págs. 583-584, estamos ante una controversia "definida y concreta, [que afecta] las relaciones jurídicas de partes que [tienen] intereses jurídicos antagónicos". Es decir, estamos ante un pleito "real y substancial" cuyo "remedio específico [es por medio de] una sentencia de carácter concluyente, a diferencia de una opinión que exprese cuál sería el derecho aplicable a unos hechos hipotéticos". Íd.

Distinto a lo que ocurrió en ELA v. Aguayo, supra, no estamos ante un litigio abstracto, por el contrario, aquí se encuentra en tela de juicio la libertad de una persona. En este caso, las partes vehemente han tenido interés en el pleito y manifestaron continuar con el mismo. Asimismo, no ocurre que una de las partes tenga el completo dominio de ambos lados del litigio. Los actos del señor O'Neill García en este procedimiento demuestran que tiene una participación activa en el litigio, que ha sido visto y está representado por un abogado. Asimismo, argumenta como una verdadera parte adversa del pleito. De igual forma, el FEI participa activamente del litigio, incluso, ambas partes comparecen reiteradamente ante este Tribunal para afirmar y defender sus posturas antagónicas. Recordemos que, distinto a otros casos en los que se discutió esta doctrina, el proceso contra el señor O'Neill García es criminal. Por su propia

naturaleza, este tipo de casos son antagónicos y los intereses de una parte son polarmente opuestos a los de la otra.

Según adelanté, una mayoría de este Tribunal entiende que estamos ante un pleito colusorio porque (1) no existen intereses antagónicos entre las partes y (2) nuestra decisión sobre la prescripción del delito de actos lascivos no va a impactar las relaciones jurídicas de las partes. Ese análisis no se sustenta en los hechos del caso ni en las alegaciones del señor O'Neill García o del FEI.

Las partes en este caso, según exige la doctrina de pleitos colusorios, participaron activamente del litigio. Igualmente, defendieron enérgicamente sus posturas en cuanto a si el delito está prescrito. Solo basta con examinar el trámite apelativo del caso, los alegatos y los escritos en cumplimiento de orden. Ello significa que estamos ante una controversia real y viva presentada por dos litigantes con posturas opuestas. No podemos suponer —como hace una mayoría— que las partes acordaron presentar esta controversia con la única intención de que el Tribunal se exprese en cuanto a la prescripción de los delitos cometidos por funcionarios públicos en el descargue de su función pública.

De los alegatos y las comparecencias de las partes se desprende evidentemente que existe una controversia genuina y viva que de haber sido resuelta hubiese afectado las relaciones jurídicas de los litigantes. Por una parte, si

hubiésemos resuelto que el delito de actos lascivos contra el señor O'Neill García está prescrito, se hubiese sostenido la desestimación del cargo. En cambio, si hubiésemos decidido que el delito no está prescrito, el Ministerio Público hubiese tenido la opción de elegir entre proseguir con un preacuerdo en el que el señor O'Neill García **se declaraba culpable** a cambio de un beneficio o si llevar el caso a juicio.

Como señalaron tanto el señor O'Neill García como el FEI, el documento confidencial que las partes firmaron no impacta la adjudicación que debíamos hacer. Las conversaciones preliminares entre el Ministerio Público y un acusado sobre una alegación de culpabilidad relacionada a un cargo desestimado no son vinculantes ni pueden afectar *a priori* el rumbo de un procedimiento criminal. Para que una conversación de este tipo culmine en un preacuerdo se requiere, entre otras cosas, que el caso esté vivo. No se puede hacer un preacuerdo sobre un caso archivado. Además, por estar involucrado un FEI, es necesario que el PFEI apruebe cualquier negociación previo a que se presente como un preacuerdo. Art. 12 (6) de la Ley de la Oficina del Panel sobre el Fiscal Especial Independiente, 3 LPRA sec. 99s. Finalmente, si se presenta una alegación preacordada al tribunal, conforme a la Regla 72 de Procedimiento Criminal, supra, es necesario que el foro judicial la acepte. Mientras lo anterior no ocurra, como en este caso, no existe un preacuerdo.

En vista de lo anterior, sostengo que fue un error craso de la mayoría anular el auto. Esto, al basarse en el documento confidencial que firmaron las partes —y que se puede considerar como un borrador preliminar de un preacuerdo— para concluir que estamos ante un pleito colusorio. El documento no tiene validez jurídica alguna, por ende, no afectaba nuestra jurisdicción. De hecho, lo que existe entre las partes es más bien una promesa de negociación, cuyas opciones son especulativas y dependían totalmente de lo que resolviera el Tribunal. Lo que es más, el FEI solamente podía formalizar un preacuerdo con el señor O'Neill García si este Tribunal revocaba la decisión del Tribunal de Apelaciones. Encima, para llegar a un preacuerdo conforme a la Reglas de Procedimiento Criminal, le correspondería al FEI traer a la luz pública la transacción que pretende presentar al Tribunal de Primera Instancia y encarar a la víctima del caso en cuanto a su determinación respecto al procesamiento del mismo.

### III

Ante ello, el Tribunal debió resolver la controversia que se nos presentó en cuanto a la prescripción del delito de actos lascivos. De haberlo hecho, la conclusión inevitable era que la acción penal contra el señor O'Neill García <u>no</u> está prescrita. Para llegar a esta conclusión, debíamos analizar si la conducta imputada constituye un "delito grave […] cometido por un funcionario o empleado

público en el desempeño de la función pública" bajo el Art. 100 del Código Penal de 2004.

Al señor O'Neill García se le imputó cometer el delito de actos lascivos, codificado en el Art. 144 del Código Penal de 2004, mientras se desempeñaba como alcalde del Municipio de Guaynabo. Como parte del análisis, de entrada teníamos que descartar el alcance limitado que el señor O'Neill García propuso que se le confiriera a la porción del Art. 100 del Código Penal en controversia. Su postura no está avalada por el texto de la ley ni por su historial legislativo. Por el contrario, ambos: el texto de la ley y el historial nos llevan a la conclusión de que la intención de la Asamblea Legislativa fue conferir un alcance amplio a la disposición en disputa.

El texto del Art. 100 del Código Penal de 2004 establece claramente que no prescriben **todos los delitos graves**— tanto de este Código como de una ley especial— que se imputan **a un funcionario o empleado público en el desempeño de la función pública**.[6] En primer lugar, esto significa que incluye todo delito grave que se cometa en las circunstancias que expresa el artículo, mas no así los delitos menos graves. Lo segundo que se puede colegir sin dificultad es que la disposición

---

[6] Art. 100, el cual establecía qué delitos serían imprescriptibles bajo el Código Penal de 2004, lee como sigue:
En los siguientes delitos la acción penal no prescribe: delito grave de primer grado, genocidio, crimen de lesa humanidad, asesinato, secuestro y secuestro de menores, malversación de fondos públicos, falsificación de documentos públicos y **todo** delito grave tipificado en este Código o en ley especial cometido por un funcionario o empleado público en el desempeño de la función pública. 33 LPRA ant. sec. 4728. (Subrayado y Énfasis suplido)

legal aplica además cuando el sujeto activo es un funcionario o empleado público. En tercer lugar, del estatuto queda claro que el mero hecho de que un delito grave se le impute a un funcionario o empleado público no lo hace imprescriptible. Tiene que haberse cometido "en el desempeño de la función pública". Sobre esto último, de las definiciones de "funcionario o empleado público"[7] y de "función pública"[8] se puede colegir que "función pública" es simplemente: (1) un cargo, puesto, empleo o posición en el servicio público o (2) una actividad o una función que se realiza en el desempeño de estos.

Este significado no solo se desprende del sentido común de las palabras claras que la Asamblea Legislativa empleó,

---

[7] El inciso (p) del Art. 14 del Código Penal de 2004 contenía una definición de lo que es un "funcionario" o "empleado público". Lo definía en los términos siguientes:

[E]s la persona que ejerce un cargo o desempeña una función o encomienda con o sin remuneración, permanente o temporeramente, en virtud de cualquier tipo de nombramiento, contrato o designación, para la Rama Legislativa, Ejecutiva o Judicial o del gobierno municipal del Estado Libre Asociado de Puerto Rico. Incluye aquellas personas que representan el interés público y que sean designadas para ocupar un cargo en una junta, corporación pública, instrumentalidad y sus subsidiarias del Estado Libre Asociado de Puerto Rico, así como aquellos que sean depositarios de la fe pública notarial. El término funcionario público incluye aquellas personas que ocupan cargos o empleos en el gobierno del Estado Libre Asociado que están investidos de parte de la soberanía del Estado, por lo que intervienen en la formulación e implantación de la política pública. 33 LPRA ant. sec. 4642.

[8] La Ley Núm. 50 de 5 de agosto de 1993 (derogada, que es contemporánea a la Ley Núm. 51 de 1993, que enmendó el Art. 78 del Código Penal de 1974, conocida como la Ley para Establecer la Prohibición de Aspirar u Ocupar Cargo Público a Todo Funcionario o su Coautor Convictos de Actos de Corrupción, contenía esta definición de "función pública":

[c]ualquier cargo, empleo, puesto, posición o función en el servicio público, ya sea en forma retribuida o gratuita, permanente o temporal, en virtud de cualquier tipo de nombramiento, contrato o designación para la Rama Legislativa, Ejecutiva o Judicial del Gobierno del Estado Libre Asociado de Puerto Rico, así como cualquiera de sus agencias, departamentos, subdivisiones, instrumentalidades, corporaciones públicas o municipios. Art. 1 de la Ley Núm. 50-1993, 3 LPRA ant. sec. 1491.

sino que es compatible con el propósito o problema social que inspiró la adopción del estatuto. La prescripción en lo penal nace del ejercicio legislativo, por lo que el análisis de su alcance requiere un ejercicio de hermenéutica estatutaria que exige ir más allá del texto jurídico. En ese ejercicio, se puede identificar que el Art. 100 del Código Penal de 2004 procedió del Art. 78 del Código Penal de 1974. Ambos establecían los delitos que no estarían sujetos a un término prescriptivo. En su origen, el Art. 78 establecía la imprescriptibilidad de cinco delitos únicamente.[9] Sin embargo, mediante la Ley Núm. 51-1993 se enmendó el Código Penal para añadir una lista extensa de delitos.[10] En la Exposición de Motivos de la ley se explicó que eran delitos

---

[9] "[…] salvo los delitos de asesinato, malversación de fondos públicos, secuestro, robo de niños y falsificación de documentos públicos que no prescriben." Art. 78, 33 LPRA ant. sec. 3412.

[10] Tras la enmienda, en lo pertinente, se añadió al Art. 78 lo que sigue:

La acción penal prescribirá:

[…]**Tampoco prescribirán los siguientes delitos**, identificados como delitos contra la propiedad pública, la función pública, el erario público, la función judicial o la fe pública: apropiación ilegal agravada; escalamiento agravado; extorsión; daño agravado; sabotaje de servicios públicos esenciales; fraude en las construcciones en su modalidad grave; fraude en la ejecución de obras de construcción en su modalidad de grave; fraude en la entrega de cosas; aprovechamiento por funcionario de trabajos o servicios públicos; negociación incompatible con el ejercicio del cargo público; intervención indebida en los procesos de contratación de subastas o en las operaciones del gobierno; retención de documentos que deben entregarse al sucesor; destrucción o mutilación de documentos por funcionarios públicos; destrucción o mutilación de documentos por personas que no sean funcionarios públicos; archivos de documentos falsificados; soborno; soborno (delito agravado); soborno de testigo; oferta de soborno; influencia indebida; delitos contra fondos públicos; posesión ilegal de recibos de contribuciones; preparación de escritos falsos; presentación de escritos falsos; falsificación de documentos; posesión y traspaso de documentos falsificados; falsificación de asientos en registros; falsificación de sellos; falsificación de licencia, certificado y otra documentación; y posesión de instrumentos para falsificación[…] **siempre que se refieran a delitos cometidos por funcionarios o empleados públicos en el desempeño de sus funciones.** […](Énfasis suplido).

que, por su naturaleza, constituían actos de corrupción y que se añadieron para evitar que a los funcionarios o empleados que incurrieran en estos no se les pudiese procesar criminalmente por haber prescrito la acción penal en su contra. Exposición de Motivos, Ley Núm. 51-1993. Así, se puede colegir que la enmienda que introdujo la Ley Núm. 51-1993 buscaba servir como una herramienta adicional del Estado para combatir la corrupción gubernamental.

Sin embargo, al aprobar el Código Penal de 2004, supra, a pesar de que la legislatura conservó la herramienta anticorrupción del Art. 78 —renumerado como el Art. 100— decidió reformularlo para modificar y ampliar su alcance. A esos fines, prescindió de la lista taxativa de delitos que introdujo la Ley Núm. 51-1993 y la referencia limitada a que los delitos comprendidos en el artículo eran solo contra la propiedad pública, la función pública, el erario, la función judicial o la fe pública. En su lugar, estableció que la imprescriptibilidad se extendería a **todo** delito grave cometido por un funcionario o empleado público en el desempeño de la función pública. Esto implica, necesariamente, que —contrario a su antecesor el Art. 78— el Art. 100 no se limita a algunos delitos graves en particular cometidos contra cierto bien jurídico protegido en específico. En cambio, abarca cualquier delito grave, independientemente del bien jurídico protegido que afecte. Interpretar lo contrario y determinar que el Art. 100 tiene el mismo alcance que tenía el Art. 78 conllevaría ignorar su

historial legislativo y su texto. Pero no podemos limitar la extensión del Art. 100 cuando ninguna norma de interpretación lo sustenta. Adviértase que si la Asamblea Legislativa hubiese deseado que el Art. 100 se extendiera solamente a ciertos delitos graves contra la propiedad pública, la función pública, el erario, la función judicial o la fe pública lo hubiese dispuesto de esa manera, como lo había hecho previamente bajo el Código Penal de 1974. Sin embargo, optó por no establecer esos límites. Por lo tanto, si bien el Código Penal de 2004 identificaba el delito de actos lascivos como uno contra la indemnidad sexual, eso no lo excluye del alcance del Art. 100, puesto que esa característica no es relevante.

Todo esto, en unión al texto claro del estatuto, apoya una interpretación extensiva de la frase del Art. 100 en controversia, en particular respecto a lo que significa "en el desempeño de la función pública", para incluir el delito grave de actos lascivos.

Recuérdese que al aprobar el Código Penal de 2004 la Asamblea Legislativa tuvo la intención de combatir la corrupción gubernamental con firmeza y para ello se tomó en consideración el hecho de que la ciudadanía confiere mayor gravedad a que un delito lo cometa un funcionario público en lugar de un ciudadano particular.[11] **Además, no se puede**

---

[11] Sobre esto cabe recordar que la imprescriptibilidad de los delitos se establece en consideración a los afectos adversos que la conducta delictiva tiene en los cimientos de la sociedad. La conducta constitutiva de corrupción por parte de funcionarios y empleados públicos ciertamente afecta gravemente los cimientos de la sociedad puertorriqueña.

**perder de perspectiva que la corrupción gubernamental no se limita a actos que tienen como fin obtener capital financiero, según resolvimos recientemente en _Pueblo v. Arlequín Vélez_, 204 DPR 127 (2020).** Va más allá y por eso entidades como el Fondo Monetario Internacional la han definido de manera amplia como "el abuso del poder público para el beneficio privado".[12] Esto, porque se entiende que la corrupción ocurre cuando el funcionario actúa en contra de las normas para obtener un beneficio o recompensa económica, social, política o incluso hasta ideológica.[13] De este modo, a nivel internacional se ha interpretado que los actos sexuales —y en particular la violencia sexual— pueden ser objeto de corrupción.[14] Este tipo de corrupción ocurre "cuando personas en posiciones de autoridad -ya sean jueces, gobierno, funcionarios, educadores, personal encargado de hacer cumplir la ley o empleadores- buscan obtener sexo a cambio de algo que esté en su poder de conceder o retener".[15]

---

[12] Christine Lagarde, _Addressing Corruption with Clarity_, (IMF Speech, 2017), disponible en https://www.imf.org/en/News/Articles/2017/09/18/sp091817-addressing-corruption-with-clarity; Vito Tanzi, Corruption Around the World: Causes, Consequences, Scope, and Cures 8 (IMF Working Paper, Paper No. 63, 1998), _disponible en_ https://www.imf.org/external/pubs/ft/wp/wp9863.pdf (traducción suplida).

[13] Eric Cordero Cirilo, _La corrupción gubernamental: el reto para un liderato virtuoso_, 33 REV. DE ADM. PÚB. 133, 135 (2002) (_citando a_ Leonardo Santana Rabell, La corrupción gubernamental, causas, consecuencias y cómo combatirla, Cumbre Social, Vega Alta, Puerto Rico).

[14] Transparency International, _Mujeres y corrupción en Latinoamérica y el Caribe_, TRANSPARENCY INTERNATIONAL (23 de septiembre de 2019), https://www.transparency.org/news/feature/mujeres_y_corrupcion_en_lati noamerica_y_el_caribe.

[15] Aída Tarditti, _El concepto de corrupción sexual_, Ponencia de la Presidenta de la Asociación de Mujeres Jueces de Argentina en el taller de 23 de noviembre de 2020 "Corrupción sexual: Una Agenda para su combate en América Latina".

**Esa interpretación la acogimos en nuestro ordenamiento al determinar "que existe un beneficio personal e ilegal en los casos donde un funcionario público —en este caso un alcalde— utiliza los deberes y las facultades de su puesto para proporcionarse un beneficio ilegal —como un favor sexual no consentido— acosando sexualmente a otra persona."** Pueblo v. Arlequín Vélez, **supra, págs. 172-173.** (Énfasis suplido). Por lo tanto, difícilmente se podría argumentar que, al ser una medida anticorrupción, la disposición del Art. 100 del Código Penal de 2004 no se extiende a supuestos en los que un funcionario o empleado público se aprovecha de las funciones, facultades y poderes de su cargo para delinquir y particularmente incurrir en delitos sexuales contra alguno de sus subordinados. **El delito grave de actos lascivos, al igual que el delito grave en el que un funcionario o empleado público malgasta los recursos del Estado, es un acto ajeno a la función pública y al realizarse en el desempeño de sus funciones, para beneficio personal y con fines ajenos al bienestar general, constituye un acto de corrupción.**

En este caso, el Estado acusó al señor O'Neill García de cometer el delito de actos lascivos, codificado en el Art. 144 del Código Penal de 2004, supra, mientras se desempeñaba como alcalde del Municipio de Guaynabo. Según la interpretación anterior, para que el delito imputado esté comprendido en el Art. 100 —y sea, por tanto, no prescriba— debe satisfacer los requisitos siguientes: (1) ser un delito grave codificado en el Código Penal o en una ley especial;

(2) el autor o sujeto activo del delito es un funcionario o empleado público, y (3) el delito se cometió: (i) mientras el funcionario o empleado público ejercía su cargo, puesto, empleo o posición o (ii) a través del ejercicio de una actividad o función inherente que se realiza en el desempeño del cargo, puesto, empleo o posición pública.

En cuanto al primer requisito, este se satisface, ya que el delito de actos lascivos estaba tipificado en el Código Penal de 2004 como un delito grave de tercer grado. El segundo requisito también se satisface, puesto que el señor O'Neill García era un funcionario o empleado público al momento en que ocurrieron los alegados actos delictivos, ya que para entonces ostentaba el puesto de alcalde del Municipio de Guaynabo. Finalmente, el tercer requisito está presente por igual. Al señor O'Neill García se le acusó de haberle tocado los senos y las nalgas, lamido el área del abdomen, alzado la camisa e intentado besar a su subalterna mientras estaba en funciones como primer ejecutivo municipal. Cabe destacar que, según pretende probar el Ministerio Público en el juicio, dichos actos lascivos ocurrieron cuando la subordinada se le acercó al señor O'Neill García en su carácter como alcalde de Guaynabo en la búsqueda de ayuda para una vivienda. Dicha asistencia social es parte de las facultades que los alcaldes y alcaldesas poseen en el desempeño de su cargo. Véase Art. 9.015 de la "Ley de Municipios Autónomos de Puerto Rico", Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4464a (derogada). El que

un funcionario público aproveche su posición de poder para citar a una persona a su oficina y cometa un delito mediante el cual obtenga o pretenda obtener beneficios sexuales, como lo son actos lascivos, constituye un acto de corrupción imprescriptible.

En este caso, el acusado presuntamente utilizó su cargo público para, en curso del ejercicio de este, despertar, excitar y satisfacer su deseo sexual al sujetar a una empleada municipal a un acto no consentido. Además, presuntamente se aprovechó del poder de su cargo para cometer un acto impúdico contra una subalterna, mediante el uso de fuerza, violencia o intimidación. Todo ello, mientras estaba en "en el desempeño de la función pública". Esa conducta, de haber sido probada, constituiría un acto de corrupción evidente, en la medida en que conllevaría la mala utilización de su cargo y la función pública para cometer un delito altamente repudiable. **A raíz de lo anterior, era forzoso concluir que al delito grave que se le imputó al señor O'Neill García le aplica el Art. 100 del Código Penal de 2004 y, por lo tanto, no está prescrito.**

Lamentablemente, al una mayoría anular el auto, el Tribunal renunció a resolver un claro caso y controversia ante su consideración. Ello, ante conjeturas sobre actuaciones futuras del FEI y el señor O'Neill García que dependen de diversos factores sobre los que no tenemos control. Aunque no logro explicarme las razones del FEI para suscribir un mal llamado acuerdo sobre un asunto de alto

interés público que tiene el efecto de privar a la presunta víctima de su día en corte, creo firmemente que un pronunciamiento de este Tribunal era apropiado para aclarar el estado de derecho que claramente impactaría el proceso criminal pendiente en este caso. Si en efecto la intención del FEI era encausar por otro delito o desistir de la causa penal —lo que en esta etapa sería especulativo—, el resultado no debe ser que cerremos las puertas a los intereses importantes que vindica un proceso criminal, en especial los derechos que posee la víctima del delito. Por estas razones disiento del curso de acción acogido y hubiera ejercido nuestra jurisdicción para resolver la controversia sustantiva, con el efecto de que el proceso penal continuara su curso ordinario.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Héctor O'Neill García<br><br>Recurrido | AC-2020-0010 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 1 de abril de 2022.

En otra movida desacertada en el trámite sinuoso de esta controversia, hoy, una mayoría de los miembros de este Foro optó por cerrar la puerta, de forma final y definitiva, a nuestra consideración cabal de este caso. Tal curso de acción se refugia en la sombra de una alegada falta de justiciabilidad que, a mi juicio, emana de una interpretación errada y forzada de los hechos y el Derecho. ¡Una interpretación tan forzada que ni siquiera la representación legal del acusado osó plantearla!

El resultado final no es solo la incertidumbre a perpetuidad en una de las controversias de más alto perfil que ha llegado a nuestra consideración recientemente, sino también el abandono de nuestra responsabilidad de interpretar y pautar el Derecho con el fin de garantizar

que la injusticia no evada con tanta facilidad la rendición de cuentas.

Lo que es más, la búsqueda afanada y todavía cuestionable de obstáculos jurisdiccionales trajo consigo la afirmación contundente de justiciabilidad tanto del Ministerio Público como del Recurrido. Sin embargo, este Tribunal procede de forma obstinada a sepultar abrupta e irreflexivamente toda posibilidad de pronunciarnos con respecto a una controversia que, a todas luces, sigue viva. Tal determinación es al extremo desconcertante y nociva a nuestro ordenamiento.

Por estar en absoluto desacuerdo con tal proceder y entender que no existe impedimento alguno que se interponga con nuestra administración de la justicia en este caso, disiento. A continuación, procedo a exponer las razones que anclan mi postura, no sin antes describir los hechos que enmarcan esta controversia.

**I**

Como es de conocimiento general, en el 2017, la Oficina del Fiscal Especial Independiente (FEI) presentó varios cargos en contra del Sr. Héctor O'Neill García (señor O'Neill García), entre estos, una violación al Art. 144 del Código Penal de 2004 por actos lascivos. Posteriormente, el señor O'Neill García solicitó el sobreseimiento de tal delito bajo el argumento de prescripción. Su planteamiento no tuvo éxito ante el Tribunal de Primera Instancia, pero fue acogido por el

Tribunal de Apelaciones, quien revocó al foro primario y decretó que el delito imputado estaba prescrito. En consecuencia, el FEI acudió ante este Tribunal, donde expedimos el recurso solicitado con el fin de examinar la controversia en los méritos.

Mientras tal recurso se encontraba ante nuestra consideración, el 24 de noviembre de 2021, el señor O'Neill García y el FEI alcanzaron una alegación pre acordada por cuatro (4) de los cargos que pesaban en contra del primero. Este fue aprobado por el Tribunal de Primera Instancia el 18 de febrero de 2022. El delito de actos lascivos bajo nuestra consideración no formó parte de tal acuerdo, pues no tenía relación alguna con aquellos delitos e, incluso, se trataban de víctimas distintas.

No obstante, el 15 de marzo de 2022, bajo el pretexto de constatar nuestra jurisdicción, este Tribunal ordenó a las partes a notificar si existía algún otro compromiso o acuerdo entre el FEI y el señor O'Neill García. Según consta en el récord público jurisprudencial, expresé mi oposición a tal curso de acción de la manera siguiente:

> Hoy, en un giro inusual, una mayoría de este Tribunal tomó la iniciativa de ordenar a las partes del pleito a que le informe sobre asuntos que no han sido materia de planteamiento, cuestionamiento o notificación alguna por cualesquiera de los involucrados en esta controversia. Es decir, este Tribunal decidió adoptar un rol al extremo proactivo en la búsqueda de obstáculos jurisdiccionales, a pesar de una ausencia marcada de justificación para ello y en lo que es, a todas luces, un ejercicio que corresponde a las partes.

Adviértase, que la acción que hoy adopta este Tribunal resulta excepcional al contrastarla, precisamente, con otras instancias en las que el grado de consideración hoy ofrecido no ha sido igualmente conferido a la protección de derechos de otros acusados, especialmente aquellos despojados de representación legal. En contraste, hoy una Mayoría toma acciones adicionales que ni tan siquiera la distinguida representación legal del acusado ha considerado necesario adoptar, precisamente, porque incluir el delito ante nuestra consideración en la alegación pera cordada hubiese sido una afrenta a la jurisdicción de este Tribunal. Esto, dado a que el Tribunal de Primera Instancia estaría impedido de impartirle su visto bueno por la etapa procesal apelativa en que se encuentra la controversia. Ante ese cuadro, resulta sorprendente que se interrumpa el cauce de nuestra revisión y, en lugar de proseguir con el trámite ordinario, se emita esta orden inhabitual.

Por entender que procedía continuar con el trámite ordinario en la disposición de este asunto, pues no existe razón alguna para interrumpirlo con el fin de investigar, motu proprio, la existencia de alguna posible barrera que no se ha manifestado, disiento.[1]

Posteriormente, ambas partes comparecieron en cumplimiento con la orden de este Tribunal. De entrada, **el FEI** negó en su moción que pudiera existir un acuerdo entre las partes, pues cualquier acuerdo requiere la aprobación del Panel del FEI[2] y, subsiguientemente, la del Tribunal

---

[1] Pueblo v. O'Neill García, 2022 TSPR 26, 208 DPR ___ (2022). (Expresión Disidente del Juez Asociado señor Estrella Martínez).

[2] Según surge del Art. 12(6) de la Ley Núm. 2 de 23 de febrero de 1988, conocida como la Ley Habilitadora del Panel sobre el Fiscal Especial Independiente, según enmendada, 3 LPRA sec. 99s:

de Primera Instancia. Indicó que "**[a]ntes de que este proceso se lleva a cabo, no existe alegación pre-acordada. En el caso que nos ocupa, no existe Resolución del Panel a esos fines**".[3] Entiéndase, aunque existe un borrador del documento, "no existe resolución alguna del Panel sobre el mismo, y no se ha presentado ante tribunal alguno", por lo que "el mismo constituye la expresión de las partes sobre el curso a seguir en el supuesto de cualquiera de las dos posibles determinaciones que pudiera tomar este foro".[4]

Asimismo, el FEI señaló que, toda vez que el señor O'Neill García planteó con éxito ante el Tribunal de Apelaciones que el delito de actos lascivos estaba prescrito y, por ende, fue desestimado, **este no puede formar parte de preacuerdo alguno, pues el foro primario no tiene jurisdicción sobre el asunto.** Afirmó, además, que

---

Independientemente de lo establecido en el inciso 3 de este Artículo, el Fiscal Especial tendrá que contar con la aprobación del Panel para poder aceptar u ofrecer alguna alegación preacordada. El Fiscal Especial solicitará al Panel su aprobación mediante un escrito que expresará los alcances y efectos de la alegación preacordada propuesta. El Panel tendrá cinco (5) días calendario para contestar la solicitud. De no contestarla dentro del término requerido la solicitud se entenderá como denegada. En aquellos casos donde haya habido negociaciones acordadas, dicha autorización certificada por el Panel tendrá que obrar en autos al momento de dictarse sentencia.

[3] (Negrillas suplidas). Moción en cumplimiento de orden presentada por el FEI, pág. 2.

[4] Íd., pág. 4.

no tenía intención de desistir de su causa de acción, y aunque aceptó que había mantenido conversaciones con el Recurrido, indicó que estas siempre habían estado sujetas a la determinación que eventualmente tomara este Tribunal. Por consiguiente, denegó categóricamente que el caso se hubiera tornado académico y, por el contrario, sostuvo que la controversia **"es una justiciable, real, así como cónsona con la norma de que a los funcionarios públicos no se le debe conceder más beneficios que a cualquier otro ciudadano"**.[5] En fin, el FEI afirmó que:

> Sobre el caso que nos ocupa, con el mayor de los respetos, en ninguna etapa del proceso, hemos contemplado solicitar el archivo y no existe intención de desistir de la acción. Tenemos muy claro que ello dejaría sin jurisdicción a este Honorable Tribunal o tornaría académico el presente caso. No hemos librado la presente batalla jurídica para abandonar la causa de acción promovida. Igualmente, somos conscientes de nuestra obligación ética de informar a este Honorable Tribunal de haber tomado cualquier determinación final en este asunto.
>
> Nada de lo anteriormente expresado implica que, como en todo caso, no se hayan llevado a cabo conversaciones con el abogado de la defensa. Por el contrario, expresamos que se han sostenido conversaciones en esa dirección en todos los casos presentados en contra del acusado, la primera parte del cual ha culminado. Hemos tenido presente que existe una controversia real, viva y con posibilidades de ser recurrente, por lo que cualquier conversación, documento o posibilidad de acuerdo está condicionado a la determinación que, en su día, tome este Honorable Tribunal.[6]

---

[5] (Negrillas suplidas). Íd., pág. 3.

[6] Íd., págs. 3-4.

Por su parte, **el señor O'Neill García** describió la imposibilidad jurisdiccional de llegar a un acuerdo sobre el delito de actos lascivos en el Tribunal de Primera Instancia, principalmente por este encontrarse bajo la consideración de este Tribunal. Más importante todavía, aunque reconoció que existía un documento firmado por las partes relacionado al asunto en controversia, sostuvo que **"[e]ste documento, no convierte el recurso de epígrafe en uno académico".**[7]

A pesar de la postura clara de las partes con respecto a la validez y la prevalencia de la controversia, una mayoría de este Tribunal determinó que procedía anular los autos del caso y ponerle fin a nuestra consideración sin pronunciamiento ulterior alguno. Esto, tras concluir que el documento en cuestión demuestra que se trata de un pleito colusorio que no tendrá impacto en la relación jurídica entre las partes. A mi juicio, nada más lejos de la verdad.

## II

Una vez más, nos encontramos ante una interpretación maquinal y forzada de los hechos para sustentar un curso de acción patentemente errado que, a su vez, en nada sirve a la administración sana de la justicia. Como se discutirá a continuación, los hechos del caso, su trámite contencioso

---

[7](Negrillas suplidas). Escrito en cumplimiento de orden presentado por el señor O'Neill García, pág. 5.

y la prevalencia de posturas e intereses opuestos entre las partes demuestra la legitimidad del cuestionamiento jurídico. Asimismo, el diálogo entre las partes y el potencial arreglo subsiguiente no implica que nuestra determinación vaya a carecer de efectos jurídicos. Esto, en particular, cuando no se ha demostrado el poder vinculante del único documento que nos fue presentado al respecto.

Conforme se indicó, la validez de cualquier acuerdo con el FEI depende, por disposición estatutaria, de que: (1) se presente por escrito al Panel del FEI, y (2) sea aprobado por el Panel mediante una resolución certificada. El FEI asevera que ninguno de estos pasos ha sido tomado, lo cual el señor O'Neill García no contradice. De hecho, tal contención es de fácil corroboración, pues, en efecto, no surge indicio alguno de que se hubieran seguido las exigencias estatutarias para un acuerdo válido y vinculante.[8] No podemos olvidar, además, que el Tribunal de Primera Instancia debe darle el visto bueno y que, antes de

---

[8]El criterio mayoritario con respecto a este asunto se fundamenta en la lectura literal e irrestricta de un párrafo en el documento que proclama la aprobación del Panel del FEI. Aun de ello ser suficiente para comprobar el cumplimiento con el primer requisito, que a mi juicio no lo es, no se desprende del expediente certificación alguna a tales fines. Incluso bajo el supuesto de que tal certificación solo procede al momento de dictarse la sentencia, lo cierto es que no existe ninguna otra prueba de la aprobación del FEI más allá de lo que bien puede haber sido una formalidad en el documento sin capacidad vinculante alguna. No menos importante, ni siquiera obra en el expediente el parecer de la víctima del delito.

ello, las partes pueden retirar el compromiso en cualquier momento.

Además, independientemente de lo que las partes hubieran expresado en el documento, no solo este carece de validez y capacidad vinculante, sino que también sujeta sus consecuencias a la determinación que hubiera emitido este Tribunal en los méritos. No puede ser de otra forma, pues el dictamen que todavía prevalece proveniente del Tribunal de Apelaciones se alinea con la postura del acusado y le exime de toda responsabilidad jurídica. Es decir, de haberse reafirmado que el delito de actos lascivos estaba prescrito, no hubiera necesidad alguna de que el señor O'Neill García acudiera al mecanismo de la alegación pre acordada.

Ahora bien, si hubiéramos pautado lo contrario, nuestra determinación tendría repercusiones jurídicas entre las partes y, como cuestión de derecho, se hubiera despejado el panorama para que estos continuaran con los arreglos inherentes a su oficio, lo que bien puede incluir negociaciones legítimas para finiquitar el asunto. Mas, ello no implica que la controversia no persiste y no es justiciable. Contrario a lo que interpreta la Mayoría, las circunstancias del caso, el trámite altamente litigioso y las posturas diametralmente opuestas adoptadas por las partes demuestran que no puede tratarse de un pleito colusorio.

Como se sabe, un pleito colusorio "es aquel en que no hay controversias entre las partes y se presenta con el fin de lograr una determinación judicial que sea obligatoria". Noriega Rodríguez v. Hernández Colón, 135 DPR 406, 443 (1994). Por consiguiente, este "**se caracteriza porque las partes, o una de ellas, no tienen interés en el pleito y una de ellas tiene el dominio completo de ambos lados del litigio**". (Negrillas suplidas). Íd. Es decir, se debe tratar como tal todo caso que "carece de un sentido adversativo, donde no existe un antagonismo real en relación con los derechos a ser adjudicados, lo cual es una garantía esencial de la integridad de los procesos judiciales, e indispensable en la adjudicación de las controversias que envuelven asuntos constitucionales". Íd., pág. 445.

En términos simples, el mandato de velar por este tipo de pleito sirve para garantizar que "**existe un debate legítimo en cuanto a los derechos de las partes**". (Negrillas suplidas). Comisión Asuntos de la Mujer v. Srio. de Justicia, 109 DPR 715, 722 (1980). Esto, pues, "[e]l elemento esencial de una controversia real lo constituye un interés opuesto o antagónico entre partes opuestas". Noriega v. Hernández Colón, supra, pág. 443.

A mi juicio, la propia definición jurisprudencial del pleito colusorio está en conflicto con los hechos del caso y, en especial, con las propias declaraciones de las partes en sus respectivas mociones en cumplimiento de orden. Los

argumentos citados previamente demuestran que hay "**una controversia genuina y viva, en la cual estén presentes intereses opuestos, y que al ser resuelta afecte las relaciones jurídicas de los litigantes**". (Negrillas suplidas). ELA v. Aguayo, 80 DPR 552, 584 (1958). Recuérdese, tanto el FEI como el señor O'Neill García afirmaron su interés en prevalecer, denotaron sus posturas opuestas y enfatizaron el efecto que el resultado tendría en su relación jurídica, por lo que resulta indudable que estamos ante una controversia genuina y viva, y que persiste un interés adversativo entre las partes. Además, un dictamen de este Tribunal en torno al alcance del articulado cuestionado conllevará que el Estado y la sociedad conozcan claramente las herramientas con las que cuentan para combatir actividades ilegales en el desempeño de la función pública.

En fin, es evidente que no existe en este caso una falta de interés en el asunto, como tampoco control absoluto de una parte o la ausencia de un debate legítimo sobre los derechos de una parte. Ello es, precisamente, lo que venía obligado a resolver este Tribunal.

### III

La continuación de negociaciones, algo contemplado y avalado en nuestro Derecho Procesal Penal, no extingue la controversia genuina que existe entre las partes en torno a la prescripción o no del delito que nos ocupa. Conforme quedó demostrado, ambas partes tienen un interés veraz en

prevalecer en el litigio. Ni el Panel del FEI ni el señor O'Neill García tienen el dominio completo, ni siquiera parcial, del desenlace de esta controversia porque la negociación final está sujeta a lo que paute este Tribunal como máximo foro apelativo del derecho local.

Tras estudiar las comparecencias de las partes, a la luz del derecho aplicable, es sumamente difícil concebir que un caso revestido de tanto interés público y caracterizado por un trámite tan contencioso llegue a su fin con la imputación infundada de colusión entre las partes para obtener un dictamen sin efecto. Aquí no hay una colusión entre el FEI y el señor O'Neill García, sino realmente una colisión del dictamen mayoritario con la realidad fáctica del caso y los postulados más elementales de nuestro sistema de justicia. Por ello, disiento.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Héctor O´Neill García<br><br>Recurrido | AC-2020-0010 | |

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 1 de abril de 2022.

> **"La peor forma de injusticia es la justicia simulada"**
>
> **Platón**

Hace unas semanas atrás, cuando tuvimos la oportunidad de expresarnos, -- por primera vez --, sobre el alcance de las controversias asociadas al presente litigio, advertimos que una mayoría de este Tribunal buscaba una razón en derecho para no tener que disponer del mismo en sus méritos.[1] En ese afán, -- y en lo que insistimos fue un acto contrario a los más nobles principios de adjudicación que históricamente han conducido los trabajos de esta Curia --, mis compañeros y compañera de estrado le solicitaron a las partes en la causa de epígrafe que informaran si existía algún compromiso o preacuerdo

---

[1] Véase, *Voto Particular Disidente* en la *Resolución* de 15 de marzo de 2022.

adicional, a los ya previamente llegados,[2] referente al delito de actos lascivos por el cual fue acusado el Sr. Héctor O´Neill García (en adelante, "señor O´Neill García), y que era objeto de revisión por este Foro.[3]

Para sorpresa de éstos y ésta, y contrario a lo que estamos seguros esperaban, los actores del caso de marras, entiéndase los fiscales y el abogado de defensa, -- sin vacilar y en una sola voz --, expresaron que la controversia ante nos estaba viva y lista para ser adjudicada en sus méritos. Tanto así, que éstos hicieron referencia a una potencial alegación preacordada la cual establecía que lo allí dispuesto estaría condicionado a lo que, en su día, resolviese este Tribunal.[4]

---

[2] El 18 de febrero de 2022, el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual acogió la alegación de culpabilidad preacordada del señor O´Neill García por infracción a los siguientes delitos: Art. 3.1 de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 631; Art. 3.5(a) de la Ley Núm. 54-1989, 8 LPRA sec. 635(a), para que impute una infracción al aludido Art. 3.1 de la Ley Núm. 54-1989, *supra*; Art. 4.2(b) de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, Ley Núm. 1 de 3 de enero de 20121, según enmendada, 3 LPRA sec. 1857a(b), para que impute una infracción al Art. 263 del Código Penal de 2012 -- negligencia en el cumplimiento del deber --, 33 LPRA sec. 5354, en su modalidad menos grave, y por el Art. 135 del Código Penal de 2012 -- acoso sexual --, 33 LPRA sec. 5196. Véase, *Moción sobre alegación preacordada*.

[3] El Art. 144 del Código Penal del 2004, 33 LPRA ant. sec. 4772, vigente a la fecha de los hechos alegados en el caso de autos, prescribía que incurriría en el delito grave de actos lascivos "[t]oda persona que, sin intentar consumar el delito de agresión sexual descrito en el Artículo 142, somet[iera] a otra persona a un acto que [tendiera] a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado […]".

[4] En específico, el preacuerdo condicionado alcanzado por las partes, como bien se señala en la *Resolución* que hoy emite este Tribunal, establecía lo siguiente:

(a) El recurso que está ante el Tribunal Supremo de Puerto Rico bajo el número de caso AC-2020-0010 continuará su curso normal ante el referido Foro.

Ello, a todas luces, y a nuestro juicio, frustraba los intentos de la mayoría de despachar este caso con la anuencia de las partes y sus respectivos representantes legales. Sin embargo, -- no empece a ello --, lo señalado tanto por los fiscales como por el abogado de defensa, no los detuvo.

Ahora, en un acto de malabarismo jurídico, -- a través de un juego de palabras --, mis compañeros y compañera de estrado buscan finiquitar los asuntos ante nuestra consideración planteando que estamos ante un caso presuntamente colusorio. Nada más lejos de la verdad.

Como es sabido, los tribunales generales de justicia existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que habrá de afectar sus relaciones jurídicas. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 981 (2011); *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253, 279-280 (2010); *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 370 (2002). Eso, significa que, para el ejercicio válido del poder judicial, se requiere la existencia de un caso o controversia real. *Íd*.

---

(b) Del Tribunal Supremo confirmar al Tribunal de Apelaciones el caso de mantendrá desestimado y el mismo habrá terminado.

(c) Del Tribunal Supremo revocar al Tribunal de Apelaciones y reinstalar el cargo que fue desestimado, en ese entonces el Pueblo enmendará el pliego acusatorio para que impute una infracción al Art. 122 del Código Penal de 2004, 33 LPRA sec. 4750 (Derogado 2012). Será categoría de delito grave de cuarto grado. Hecha la enmienda, el acusado registrará alegación de culpabilidad por el delito así enmendado. Véase, *Moción condicionada sobre alegación preacordada*.

En esa dirección, y como corolario de la doctrina de justiciabilidad, hemos señalado por décadas que los tribunales deben abstenerse de atender pleitos colusorios y, por tanto, de emitir opiniones consultivas. De lo contrario, se producirían decisiones en el vacío, en el abstracto o bajo hipótesis de índole especulativa, y los tribunales, contrario a su función, actuarían como asesores o consejeros de las partes. *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715 (1980); *Noriega v. Hernández Colón*, 135 DPR 406, 441 (1994); *E.L.A. v. Aguayo*, 80 DPR 552 (1958). Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 35.

Al respecto, esta Curia ha sentenciado que los pleitos colusorios son aquellos "donde no hay controversias entre las partes y [los] mismo[s] se presenta[n] con el fin de lograr una determinación judicial que sea obligatoria […]. [Es decir,] que carecen de un sentido adversativo [pues,] no existe un antagonismo real en relación con los derechos a ser adjudicados […]". *Noriega v. Hernández Colón*, *supra*, págs. 443-445. Tal no es el caso de autos.

En el presente litigio, procedía nuestra intervención por existir una controversia genuina entre partes adversas, -- con un interés real en nuestro pronunciamiento --, la cual afectaría las relaciones jurídicas de éstas. Es decir, nos correspondía resolver si el delito de actos lascivos,

cometido por un funcionario público en el desempeño de la función pública, estaba o no prescrito.

Sobre el particular, valga señalar que el Ministerio Público -- por conducto del Fiscal Especial Independiente, el Lcdo. Miguel A. Colón Ortiz, y la Fiscal Especial Delegada, la Lcda. Leticia Pabón Ortiz, -- arguyó que "el presente caso no se ha[bía] tornado académico, [y] que ninguna conversación sobre el mismo podría tener ese efecto, no e[ra] consultivo, la controversia e[ra] una viva y justiciable". Véase, *Moción en Cumplimiento de Orden*. Por su parte, y en tono similar, el señor O'Neill García -- por conducto de su representante legal, el Lcdo. Harry N. Padilla Martínez -- advirtió que est[ábamos] ante un pleito justiciable y que el documento suscrito entre las partes "no conv[ertía] el caso de epígrafe en uno académico". Véase, *Escrito en cumplimiento de orden*.

A pesar de estas contundentes declaraciones, una mayoría de este Tribunal -- como adelantamos -- insiste en que no, que no hay tal caso o controversia porque, ahora, se trata de un pleito colusorio. Basan su contención en que la aludida alegación preacordada tendría el efecto de sustituir el delito que se le imputa al señor O´Neill García, entiéndase el Art. 144 del Código Penal de 2004 (actos lascivos), *supra*, por el delito tipificado en el Art. 122 del Código Penal de 2004 (agresión grave), 33 LPRA ant. sec. 4750. Sobre este particular, equivocadamente

razonan que dicha sustitución de delitos convirtió en colusoria la causa de autos.

Contrario a lo que sugiere una mayoría de este Foro, el documento titulado *Moción condicionada sobre alegación preacordada* -- suscrito por el Ministerio Público por conducto del Fiscal Especial Independiente y el señor O´Neill García -- no tuvo el efecto de tornar el caso ante nos académico y menos aún en uno colusorio, incoado con el fin único de que emitamos una opinión consultiva. Bastaba una cuidadosa y detenida lectura del referido documento para llegar a la anterior conclusión.

Y es que, de una lectura de la *Moción condicionada sobre alegación preacordada*, se desprende claramente que los acuerdos allí contenidos estaban **condicionados** a lo siguiente: 1) a que esta Curia resolviera en sus méritos el presente litigio confirmando o revocando la determinación del Tribunal de Apelaciones;[5] 2) a su aprobación por el

---

[5] Como ya mencionamos, el preacuerdo condicionado alcanzado por las partes, como bien se señala en la *Resolución* que hoy emite este Tribunal, establecía lo siguiente:

  (a) El recurso que está ante el Tribunal Supremo de Puerto Rico bajo el número de caso AC-2020-0010 continuará su curso normal ante el referido Foro.

  (b) Del Tribunal Supremo confirmar al Tribunal de Apelaciones el caso de mantendrá desestimado y el mismo habrá terminado.

  (c) Del Tribunal Supremo revocar al Tribunal de Apelaciones y reinstalar el cargo que fue desestimado, en ese entonces el Pueblo enmendará el pliego acusatorio para que impute una infracción al Art. 122 del Código Penal de 2004, 33 LPRA sec. 4750 (Derogado 2012). Será categoría de delito grave de cuarto grado. Hecha la enmienda, el acusado registrará alegación de culpabilidad por el delito así enmendado. Véase, *Moción condicionada sobre alegación preacordada.*

Panel sobre el Fiscal Especial Independiente, y 3) a la discreción del Tribunal de Primera Instancia para aceptar o rechazar dicho preacuerdo.[6]

Como si lo anterior no fuera suficiente, debemos recordar que, si bien nuestro ordenamiento jurídico favorece y reconoce las alegaciones preacordadas como una práctica de gran utilidad para la disposición de los casos penales, lo allí acordado no obliga a un tribunal. *Pueblo v. Acosta Pérez*, 190 DPR 823, 830-831 (2014); *Pueblo v. Pérez Adorno*, 178 DPR 946, 956 (2010); *Pueblo v. Figueroa García*, 129 DPR 798, 804 (1992). Esto es así, debido a que el tribunal tiene potestad para decidir si acepta o rechaza una alegación de culpabilidad. Regla 72 de Procedimiento Criminal de 1963, según enmendadas, 34 LPRA Ap. II, R. 72(2). Véase, además, *Pueblo v. Santiago Agricourt*, 147 DPR 179, 194 (1998); *Pueblo v. Dávila Delgado*, 142 DPR 157 (1997); *Pueblo v. Figueroa García*, *supra*, págs. 809-810.

Así las cosas, no cabe duda, pues, que en lo referente a la causa de epígrafe no procedía la anulación del auto que dio paso a la expedición de ésta. A todas luces, nos encontramos ante una controversia viva y presente -- independientemente del aludido preacuerdo condicionado --

---

[6] ¿Quién podía predecir aquí que la mayoría de este Tribunal se rehusaría a intervenir en un caso patentemente justiciable al razonar que, como consecuencia del aludido preacuerdo condicionado, "no importa lo que hubiésemos resuelto, el señor O'Neill García dejaría de estar expuesto al delito de actos lascivos, Art. 144 del Código Penal de 2004, [*supra*,] por el que fue acusado y es objeto de revisión en este caso"? Véase, *Resolución* que precede a este *Voto Particular Disidente*. No nos dejemos engañar. Lo anterior, sí importaba. Importaba, a tal punto, que de ello dependía el curso a seguir al momento de que se acogiese finalmente la alegación preacordada.

que justificaba, por mucho, nuestra intervención para, como ya hemos dicho, pasar juicio sobre la prescripción del delito de actos lascivos cometido por un funcionario público en el desempeño de la función pública.

Lo anterior, -- como ha quedado en extremo evidenciado -- no lo dice el Juez que suscribe, sino la propia representación legal de los actores del caso de marras, quienes no titubearon en reconocer que estábamos ante una controversia genuina entre partes con intereses adversos. Ello se pasó por alto aquí.

Conductas como éstas -- matizadas por un trato en extremo privilegiado -- son las que precisamente continúan lacerando la ya debilitada legitimidad y confianza de la ciudadanía en sus principales instituciones de gobierno. Lo anterior, como mínimo, es lamentable.

**En fin, hoy, con su errado proceder, una mayoría de este Foro le falla al País que nos observa, a las instituciones de justicia encargadas del procesamiento criminal, a los fiscales y abogados que forman parte del presente litigio -- quienes, según indicamos, coincidían en que este caso se debía atender en los méritos -- y, más lamentable aún, a las aquí presuntas víctimas del repugnante delito de actos lascivos. Desde la disidencia, a todos y a todas, nuestras excusas.**

Recordemos que lo importante no es tomar decisiones que parezcan correctas, sino que en efecto lo sean. Pues, "[s]i hay un mal que puede ser grave para la justicia, es

el de las apariencias […]". Véase, R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 47.


                              Ángel Colón Pérez
                              Juez Asociado